**UNITED STATES of America,**
**Appellant,**

v.

**SOCONY MOBIL OIL COMPANY, Inc.,**
**Appellee.**

**No. 5257.**

United States Court of Appeals
First Circuit.

Feb. 18, 1958.

Worth Rowley, Attorney, Department of Justice, Boston, Mass., with whom Victor R. Hansen, Asst. Atty. Gen., Daniel M. Friedman, Attorney, Department of Justice, Washington, D. C., and Anthony Julian, U. S. Atty., Boston, Mass., were on brief, for appellant.

Conrad W. Oberdorfer, Boston, Mass., with whom John L. Hall, Maurice Richardson, Boston, Mass., Herman J. Schmidt, John J. Scott and Henry C. Moses, New York City, were on brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal by the United States from an order of the United States District Court for the District of Massa-

---

chusetts dismissing five indictments charging the appellee, Socony Mobil Oil Company, Inc., with violations of Section 1 of the Sherman Act, 26 Stat. 209, as amended, 15 U.S.C.A. § 1.

There are twenty-two counts in the five indictments each one charging that Socony, being a producer and supplier of gasoline, and a certain named retail dealer in its products, had, on or about a given date, "entered into an oral contract to fix the retail prices at which [the named dealer] should thereafter sell" Socony's regular and premium gasolines to consumers. Each count set out the "substantial terms" of an alleged oral contract between Socony and one of its dealers under which the dealer, in return for some sort of concession by Socony, such as a discount from its tank wagon price, a rebate, or an abatement of service station rent, would charge his customers a stipulated price for Socony gasolines fixed low enough to meet the competition of dealers in other brands of gasolines and still leave the Socony dealer a margin of profit. In each count it was stated as a conclusion of law that the contract alleged therein was "in unreasonable restraint" of interstate trade and commerce in gasoline in violation of § 1 of the Sherman Act as amended.

Socony seasonably pleaded not guilty to each indictment and all counts thereof, reserving leave, however, to file motions presenting defenses or objections to the indictments, and a few days later it moved to dismiss each indictment and each count thereof on the ground that the contracts alleged were exempt from the prohibitions of the Sherman Act by the McGuire Act, 66 Stat. 632, 15 U.S.C.A. § 45, quoted in material part in the margin.[1] Affidavits supporting and opposing[2] the motion were filed and after briefs had been submitted and oral arguments made, the court handed down its opinion. In it the court rejected the Government's argument that the McGuire Act, properly construed, was limited only to so-called "fair trade" agreements entered into under state statutes,[3] and ruled that "the indictments allege contracts for the sale of commodities at a stipulated price" within the meaning of that Act. It took judicial notice, as we think it undoubtedly could, of the fact that Socony's gasolines were in free and open competition with commodities of the same general class produced or distributed by others, and it ruled that the underground tank at the filling station in which gasoline is stored, and from which it is drawn for delivery to customers by a pump bearing the Mobilgas label, is a "container" of that commodity as that word is used in the McGuire Act. In view of these conclusions and as fulfilling the further condition of that Act, the court then went on to rule on the basis of cited decisions of the Supreme Judicial Court of the Commonwealth of Massachusetts that under "long established public policy and common law principle" [150 F.Supp. 204] in that Commonwealth contracts such as those alleged in the indictments would be lawful in Massachusetts as applied to intrastate transactions. Wherefore, the

1. "Nothing contained in this section or in any of the Antitrust Acts shall render unlawful any contracts or agreements prescribing minimum or stipulated prices * * * for the resale of a commodity which bears, or the label or container of which bears, the trademark, brand, or name of the producer or distributor of such commodity and which is in free and open competition with commodities of the same general class produced or distributed by others, when contracts or agreements of that description are lawful as applied to intrastate transactions under any statute, law, or public policy now or hereafter in effect in any State * * * in which such resale is to be made * * *."

2. One of the Government's affidavits in opposition to the motion was not submitted to the court below until after the motion had been briefed and argued in that court. We do not think the court committed any error in rejecting that affidavit on the ground that it came "Too late to be considered on the motion to dismiss."

3. Socony was not "fair-trading" its gasoline in Massachusetts at the time of the acts alleged in the indictment.

court below concluded as a matter of law that the indictments did not charge an offense under the Sherman Act and it thereupon entered an order dismissing the indictments in accordance with its opinion.

The United States filed two notices of appeal from this order, one to the Supreme Court of the United States and the other to this court. Later, however, the United States moved in the court below to dismiss its appeal to the Supreme Court of the United States "for the reason that the Solicitor General has determined that the United States shall prosecute its appeal to the Court of Appeals." In the meantime Socony had filed its cross designation of portions of the record to be transmitted by the clerk of the District Court to the Supreme Court and it opposed the Government's motion to dismiss that appeal. The court below, however, granted the motion, but in its words, "with prejudice" and as an "irrevocable choice" by the Government. The appeal of the United States to this court remained and it prepared its case for submission. At this juncture the appellee filed a motion in this court to dismiss this appeal for lack of our jurisdiction to hear and determine it. We postponed hearing on this motion until hearing on the merits.

 The right of the United States to appeal in criminal cases is "exceptional" and the right is "strictly limited to the instances specified" in the Criminal Appeals Act. United States v. Borden Co., 1939, 308 U.S. 188, 192, 60 S.Ct. 182, 84 L.Ed. 181. That Act, Title 18 U.S.C. § 3731, provides two avenues for review. It provides for a direct appeal to the Supreme Court of the United States in certain instances and for appeal to a court of appeals in others. So far as here material the Act provides:

"An appeal may be taken by and on behalf of the United States from the district courts direct to the Supreme Court of the United States in all criminal cases in the following instances:

"From a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof, where such decision or judgment is based upon the invalidity or construction of the statute upon which the indictment or information is founded.

\* \* \* \* \* \*

"An appeal may be taken by and on behalf of the United States from the district courts to a court of appeals in all criminal cases, in the following instances:

"From a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof except where a direct appeal to the Supreme Court of the United States is provided by this section."

Clearly the order from which the United States has appealed is a "decision or judgment" dismissing an indictment or count thereof, in this case five indictments and all counts therein. It is thus appealable by the United States. The question is whether the District Court's order is appealable direct to the Supreme Court of the United States or whether it is appealable to this court. And, since our appellate jurisdiction within the limits imposed is residual, we must perforce undertake to determine the jurisdiction of the Supreme Court in the premises in order to determine our own. This poses the question, no question of the validity of either Section 1 of the Sherman Act or of the McGuire Act being involved, whether the District Court's order is "based" upon the construction of the statute upon which the indictments are founded. If the order is so based, the appeal of the United States from the order lies direct to the Supreme Court of the United States; if it is not, appeal lies to this court.

In form the order appealed from is based upon a construction of the statute upon which the indictments are founded, for the order recites that it is entered "in accordance with the opinion of the Court" of a given date, and that opinion

concludes with the statement that on the basis of previously stated findings "I rule as a matter of law that the indictments herein do not charge an offense under the Sherman Act, and the indictments, therefore, are to be dismissed." [4] The form of the District Court's order, however, is not necessarily conclusive. Our search must be directed for the substantial basis for its order of dismissal, and this requires reference to that court's opinion in accordance with which it entered its order.

The sufficiency of the indictments as pleadings was not challenged below and the District Court did not in any way even hint or suggest that as pleadings the indictments were in any way defective, as duplicitous, vague or the like. Thus it cannot be said that the District Court rested its decision, except by implication,[5] upon any defect in pleading and certainly not a defect in pleading as an independent ground, as in United States v. Wayne Pump Co., 1942, 317 U.S. 200, 63 S.Ct. 191, 87 L.Ed. 184, and United States v. Swift & Co., 1943, 318 U.S. 442, 63 S.Ct. 684, 87 L.Ed. 889, upon which the Government relies. Nor is there anything in the pleadings or the District Court's opinion to show that it gave, even *sub silentio*, any consideration to any question of the proper interpretation of the wording of the indictments. Cf. United States v. Jones, 1953, 345 U.S. 377, 73 S.Ct. 759, 97 L.Ed. 1086.

It seems to us that the District Court rested its order of dismissal basically, essentially and fundamentally upon the construction it put upon the wording of the McGuire Act. It is true that in view

of its construction of that Act the court below was also required to rule, and ruled, upon a matter of state law. But its ruling on the law of Massachusetts was not a separate or independent ground for its decision, comparable to the district courts' rulings on the sufficiency of the indictments as pleadings in United States v. Wayne Pump Co. and United States v. Swift & Co., supra. The decision of a question of state law by the court below was merely a consequence, albeit a necessary one, of the construction it put upon the McGuire Act. That is to say, having decided that the underground storage tank from which gasoline is drawn by a pump bearing the Mobilgas name or trademark is a "container" bearing the "trademark, brand or name of the producer or distributor" within the meaning of the McGuire Act, and that the McGuire Act exemption from the prohibitions of the Antitrust Acts was not limited only to so-called "fair trade" agreements entered into pursuant to state enabling statutes, but covered any contracts for the sale of the commodities specified at a stipulated price, it then had to go on to consider whether agreements of the description alleged in the indictments would be lawful as applied to intrastate transactions under any law or public policy in effect in Massachusetts. No doubt the District Court's reference to and ascertainment of state law was an element of its final decision. But it became an element of that court's decision only because of the court's construction of other provisions of the McGuire Act. This differentiates the case at bar from United States v. Howard, 1957, 352 U.S. 212, 77 S.Ct. 303, 1 L.Ed.2d 261, a case

---

4. Actually, of course, the court below was considering whether the indictments charged an offense under the Sherman Act as modified by the McGuire Act. But the United States concedes, as concede it must in view of United States v. Borden Co., 1939, 308 U.S. 188, 195, 60 S.Ct. 182, 84 L.Ed. 181, that even though the indictments were founded on the Sherman Act, nevertheless, if the decision of the court below rests upon a construction of the McGuire Act, its decision is still based upon the construction of the

statute upon which the indictments are founded.

5. "Where a court interprets a criminal statute so as to exclude certain acts and transactions from its reach, it would of necessity also hold expressly or impliedly, * * * that the indictment considered merely as a pleading was defective. Yet, the essence of the ruling would be based upon a construction of the statute." United States v. Wayne Pump Co., infra, 317 U.S. 206, 207, 63 S.Ct. 195.

taken by the Supreme Court on direct appeal, for in that case the district court construed the federal criminal statute involved in such a way that it did not reach any question of state law by holding that a Florida Game Commission regulation did not constitute the "law" of Florida within the meaning of the Federal Black Bass Act, 16 U.S.C.A. § 851 et seq. which made it a federal offense to deliver black bass or other fish for transportation from any state in violation of the "law" of the state. But whether the construction put upon a federal criminal statute leads to a question of state law or not seems to us beside the point for in either case the decision is based essentially upon the construction of the federal statute and the question of state law, if reached at all, is only incidental or subsidiary thereto. Whichever way the decision on the question of federal statutory construction leads, the decision is still one based upon the construction of the statute. The construction of the federal statute is the "real" ground for the decision, United States v. Keitel, 1908, 211 U.S. 370, 386, 29 S.Ct. 123, 53 L.Ed. 230; the question of state law, if reached at all, is not a "wholly independent" one. United States v. Hastings, 1935, 296 U.S. 188, 194, 56 S.Ct. 218, 80 L.Ed. 148.

That the "real" questions presented on this appeal are questions of the construction of the statute upon which the indictments are founded is borne out by the brief of the United States on the merits in which substantial space is devoted to those questions and only about two pages to the question of the Massachusetts law involved. Indeed it would seem that no really serious question of state law is presented anyway, for the United States in its brief on the merits does not suggest that the Massachusetts cases cited by the court below do not support its conclusion that in that Commonwealth contracts of the kind described in the indictments would be lawful as applied to intrastate transactions. Its argument is that the rule established by the cases relied upon by the court below has been superseded by the Massachusetts Fair

Trade Law, Mass.G.L. c. 93, §§ 14A, 14B, as added by St.1937, c. 398, as amended, which makes price fixing contracts of the kind therein described binding upon non-signers as well as upon the parties thereto. The argument hardly calls for refutation. It will suffice to say that one of the decisions relied upon by the court below, General Electric Co. v. Kimball Jewelers, Inc., 1956, 333 Mass. 665, 132 N.E.2d 652, post-dates the Massachusetts Fair Trade Law, and fully supports the District Court's view that, aside from its non-signer provision, the local Fair Trade Law is in effect but "a statutory recognition of a long established public policy and common law principle on the part of the Commonwealth."

Our conclusion from the foregoing considerations is that in its "essence," United States v. Wayne Pump Co., 1942, 317 U.S. 200, 207, 63 S.Ct. 191, 87 L.Ed. 184, the ruling of the court below is based upon a construction of the statute upon which the indictments are founded and that the question of state law imported into the case by the construction put upon that statute is but an incidental matter which does not deprive the Supreme Court of the United States of the jurisdiction on direct appeal conferred by Title 18 U.S.C. § 3731. Moreover, we think that this conclusion serves to effectuate the obvious Congressional policy to provide means for an expeditious review leading to an authoritative decision of important questions with respect to the validity or construction of federal criminal statutes. We therefore conclude that we do not have jurisdiction of this appeal.

This does not mean, however, as Socony contends, that we should forthwith enter an order dismissing this appeal. The final paragraph of § 3731 of Title 18 U.S.C. provides:

"If an appeal shall be taken pursuant to this section to any court of appeals, which, in the opinion of such court, should have been taken directly to the Supreme Court of the United States, such court shall certify the case to the Supreme Court of

the United States, which shall thereupon have jurisdiction to hear and determine the case to the same extent as if an appeal had been taken directly to that Court."

This provision, and the analogous one preceding it providing for remand by the Supreme Court to a court of appeals, seem clearly designed to protect and preserve the right of appeal accorded to the United States in criminal cases in the event that the United States should mistakenly take its appeal to the wrong court. To effectuate this paramount purpose, we think, in spite of the District Court's granting the Government's motion to dismiss its appeal to the Supreme Court of the United States "with prejudice" and as an "irrevocable choice," that instead of dismissing this appeal we ought to certify it to the Supreme Court.

An order will be entered certifying this case to the Supreme Court of the United States.