270 F.2d 747
 UNITED STATES of America, Appellant,
v.
APEX DISTRIBUTING COMPANY, Inc., Albert A. Finer, and James E. Halstead, Appellees.
UNITED STATES of America, Appellant,
v.
Albert A. FINER and John E. Moeller, Appellees.
 No. 15701.
 No. 15702.
 United States Court of Appeals Ninth Circuit.
 September 21, 1959.
 
 Charles P. Moriarty, U. S. Atty., Joseph C. McKinnon, Asst. U. S. Atty., Seattle, Wash., for appellant.
 H. Sylvester Garvin, Seattle, Wash., for Apex Distributing Co., Inc., and Albert A. Finer.
 Dodd & Russell, Gordon Dodd, Seattle, Wash., for James E. Halstead.
 Houghton, Cluck, Coughlin & Henry, for John E. Moeller.
 Before POPE, STEPHENS, FEE, CHAMBERS, BARNES, HAMLEY, HAMLIN, JERTBERG, Circuit Judges.
 HAMLEY, Circuit Judge.
 
 
 1
 Prior to trial the district court entered orders dismissing these two criminal actions. The Government appealed. Defendants, asserting that this court is without jurisdiction, have moved to dismiss the appeals. These motions are the only matters now before us. For the reasons hereinafter stated, the motions to dismiss the appeals are granted.
 
 
 2
 All of the defendants were indicted under 18 U.S.C.A. §§ 201 and 202, for allegedly giving and taking bribes in connection with the purchase of naval supplies. All of the defendants except John E. Moeller were also indicted under 18 U.S.C.A. § 371, for assertedly engaging in a conspiracy to defraud the United States.
 
 
 3
 Defendants in both cases, purporting to invoke Rules 16 and 17(c), Federal Rules of Criminal Procedure, 18 U.S. C.A., moved for subpoenas duces tecum and orders requiring the United States to produce certain materials before trial. The materials demanded included all documents, books, papers, and objects obtained by Government counsel in any manner (a) in the course of the grand jury investigation and (b) in the course of the Government's preparation for the trial, if such materials were presented to the grand jury or were to be offered as evidence at the trial. Expressly excepted from the materials demanded, however, were "memoranda prepared by Government counsel and documents or papers solicited by or volunteered to Government counsel which consist of narrative statements of persons or memoranda of interviews."
 
 
 4
 After a hearing on these motions the trial court ruled that defendants were entitled to inspect the materials which had been requested by them, though it considered the request as "somewhat broader in scope" than that approved in Bowman Dairy Co. v. United States, 341 U.S. 214, 71 S.Ct. 675, 95 L.Ed. 879. The United States Attorney agreed to comply with this ruling.
 
 
 5
 Several days later, having read newspaper accounts of the decision in Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103, defendants filed amended discovery motions eliminating the exceptions stated in the first motions. A hearing was held on these amended motions, at which time the court expressed the view that the amended demands were too broad in scope. Defendants then filed second amended motions somewhat limiting their demands for additional materials. The court thereupon entered orders requiring the Government to produce, for pretrial inspection and copying, all statements or reports relevant to the issues which prospective Government witnesses had made to authorized Government personnel.
 
 
 6
 A few days later the United States Attorney advised the trial court by letter that the Attorney General had directed that the statements of prospective witnesses not be produced for pretrial examination. The reason given was that, in the view of the Attorney General, the Jencks decision requires only that the pretrial statements of witnesses actually testifying for the Government be supplied and does not require pretrial discovery.[1]
 
 
 7
 Defendants then moved for orders dismissing the actions for the reason that the United States had failed and refused to comply with the described orders. A hearing was held on these motions. The court inquired as to whether the Government would comply with the orders to produce if amended to require production only of statements "which were the subject of a witness' testimony." The United States Attorney answered in the negative.
 
 
 8
 The court thereupon entered orders dismissing the actions with prejudice, and filed an opinion explaining its reasons for doing so. It is from these orders that the Government has appealed. As before stated, our present inquiry is as to the jurisdiction of this court to entertain these appeals.
 
 
 9
 Federal courts have appellate jurisdiction only to the extent conferred by statute. Carroll v. United States, 354 U.S. 394, 399, 77 S.Ct. 1332, 1 L.Ed.2d 1442. In criminal cases, except with regard to certain collateral matters not here involved,[2] the jurisdiction of federal courts to entertain appeals by the United States derives from the Criminal Appeals Act, 18 U.S.C.A. § 3731.[3]
 
 
 10
 The first four paragraphs of this section describe the kinds of decisions or judgments in criminal cases from which the United States may take a direct appeal to the Supreme Court. The fifth, sixth, and seventh paragraphs of the section describe the kinds of decisions or judgments in criminal cases from which the United States may appeal to a court of appeals. The two classes of decisions or judgments are mutually exclusive. Decisions or judgments of a kind not falling in either class are not appealable by the Government to any court.
 
 
 11
 The orders here sought to be reviewed purport to dismiss the actions "with prejudice." This suggests that possibly for that reason these orders ought to be regarded as "sustaining a motion in bar." If they should be so regarded, the United States could appeal only to the Supreme Court, and it would be our duty to certify the cases to that court. See § 3731, fourth and eleventh paragraphs.
 
 
 12
 In our view, however, the fact that these orders purport to dismiss the actions "with prejudice" is not alone sufficient to categorize them as orders sustaining motions in bar. The direction the Government's appeal must take, or whether it may appeal at all, is to be governed by the substantial basis of the orders sought to be reviewed rather than their designation and form.[4]
 
 
 13
 The reason the instant orders of dismissal were entered was that the Government had refused to obey a pretrial order for the production of papers and documents. Since this reason has nothing to do with the merits of the criminal actions, it was wholly inappropriate to dismiss them "with prejudice," however valid the orders may be in other respects.
 
 
 14
 Had the statute of limitations not barred new indictments,[5] the Government could have reindicted appellees despite the words "with prejudice" added to these dismissal orders. If dismissal of the new indictments were then sought because of the "with prejudice" provision, it may be assumed that the court would deny the motions. This it could do by modifying the original orders so as to delete the words "with prejudice," or by holding that these words were surplusage.[6] We accordingly hold that notwithstanding the words "with prejudice" used in the orders from which the Government here appeals, the orders are not subject to direct appeal to the Supreme Court as decisions or judgments sustaining motions in bar.[7]
 
 
 15
 Disregarding, therefore, the statutory exception in the case of a direct appeal to the Supreme Court, the question before us is whether these appeals are "from a decision or judgment setting aside, or dismissing any indictment * * *" as those words are used in the sixth paragraph of § 3731. If so, we have jurisdiction to entertain them; otherwise not.
 
 
 16
 While appellees do not raise the point, the orders here in question are not in terms orders "setting aside, or dismissing any indictment." They make no reference to the indictments, but each recites that "the above-entitled action be, and the same is hereby, dismissed * *."
 
 
 17
 We think that no point can here be made of the fact that the orders sought to be reviewed do not, in express terms, set aside or dismiss the indictments. Here again we are to look at substance rather than form in applying the Criminal Appeals Act. The dismissal of a criminal action inescapably sets aside or dismisses the indictment or information on which it is based.
 
 
 18
 But while status as decisions or judgments "setting aside, or dismissing" indictments within the meaning of § 3731 is not to be denied these orders because of their failure to employ those exact words, this by no means ends our inquiry. The interaction of two principles of statutory construction to which reference will now be made may require that § 3731 be given a more restricted scope than would seem to be indicated by the actual statutory language.
 
 
 19
 One of these principles is that a jurisdictional statute such as this is to be interpreted in the light of its legislative history whether or not the statutory language is ambiguous.[8] The other is that the Criminal Appeals Act is to be strictly construed, for appeals by the Government in criminal cases "are something unusual, exceptional, not favored." Carroll v. United States, supra, 354 U.S. at page 400, 77 S.Ct. at page 1336.[9]
 
 
 20
 An understanding of the true significance of the legislative history of § 3731, enacted in 1948, requires that we first review the development of the concept of Government appeals in criminal cases up to that time. The Criminal Appeals Act, giving the United States a right of appeal in criminal cases, was first enacted in 1907. 34 Stat. 1246. Under that act the United States could appeal directly to the Supreme Court, but only with respect to certain kinds of decisions or judgments.[10]
 
 
 21
 It will be noted that under the 1907 act there was no appeal from decisions or judgments responsive to pleas in abatement, as distinguished from motions to quash or set aside, or demurrers. Nor was there any appeal where the decision or judgment involved an information as distinguished from an indictment. Moreover, unless the decision or judgment quashing, setting aside, or sustaining a demurrer to the indictment was based upon the invalidity or construction of the statute upon which the indictment was founded, there could be no appeal.
 
 
 22
 For the purpose of correcting these deficiencies, and to this extent enlarging the power and authority of the United States to appeal in criminal cases, the Criminal Appeals Act was amended in 1942.[11] The 1942 form of the statute continued the employment of such common-law pleading terms as the "quashing" of, or the sustaining of a "demurrer" to, an indictment. It also added another such term — "plea in abatement."
 
 
 23
 With reference to the appellate jurisdiction newly conferred upon circuit courts of appeals by the 1942 act, the legislative history of that enactment is illuminating. In its report on this legislation, cited in footnote 11, U.S.Code Cong. Serv. 1942, page 488, the House Committee on the Judiciary said:
 
 
 24
 "This law will have the effect of permitting the Government to appeal in criminal cases to the circuit court of appeals from a decision or judgment of a district court quashing, setting aside, or sustaining a demurrer or plea in abatement to any indictment or information where the validity of the statute or construction of the statute upon which the indictment is founded is not involved. * * *
 
 
 25
 "* * * These amendments may impose upon a defendant in a criminal case the burden of expense of contesting an appeal and the hardship of having an indictment or information outstanding against him. Nevertheless your committee feels that the Government should have the right to appeal to the circuit court of appeals from the district court from decisions on demurrers or pleas in abatement to indictments or informations in cases involving the sufficiency of the allegations in the indictments or informations in the same manner in which the Government may now appeal from decisions on demurrers to indictments direct to the Supreme Court in those cases involving the invalidity of a statute or the construction of a statute." The House Committee on the Judiciary thus envisioned the 1942 legislation as permitting a Government appeal to a circuit court of appeals where the decision involved the sufficiency of the allegations in the indictment or information. Since no greater scope of circuit court jurisdiction was suggested by the committee, it may be inferred that no greater scope was intended.
 
 
 26
 The actual language used in the 1942 act, however, would indicate a somewhat broader scope of circuit court of appeals jurisdiction, though still narrowly confined. This is made clear by reference to the statutory terms "demurrer," "plea in abatement," and motion "quashing" an indictment or information.
 
 
 27
 The function of a common-law demurrer is well known. It provides a means of testing the sufficiency of the allegations of an indictment or information, or of raising special defenses thereto. The sustaining of a demurrer may or may not bar the action, depending on the nature of the defense thus raised. Since the orders of dismissal entered in the instant case were not responsive to demurrers, any further discussion of their function is unnecessary.
 
 
 28
 The common-law plea in abatement is not as well understood. The function of such a plea is to impeach the indictment or information without at the same time destroying the cause of action. The result of such a plea, if sustained, is only to delay the prosecution, for a new indictment or information may be obtained if the reason for sustaining the plea can be overcome. The matters which can be raised by such a plea are those which are not apparent from the face of the indictment or information, and which therefore can be decided only by proof of independent facts.
 
 
 29
 Initially, misnomer or misdescription of the title of the defendant were the only grounds for a plea in abatement. Gradually the function of such pleas was enlarged to include any defect in the indictment or information, or in the proceedings leading to its procurement, which required proof of extrinsic facts and was not of such a nature as to bar a future prosecution. The common-law usage as it had developed by 1942, however, did not contemplate the use of pleas in abatement as a means of raising a defense or objection which did not involve a defect in the indictment or information, or in the proceedings leading to its procurement.[12]
 
 
 30
 The common-law motion to "quash" an indictment or information also had to be based upon the invalidity of the indictment or information. Historically, motions to quash indictments or informations were based upon matters suggested by the record, whereas pleas in abatement, as we have seen, were founded upon facts outside the record.[13] While the 1942 act also refers to decisions or judgments "setting aside" an indictment or information, this was apparently intended as an alternative reference to motions to quash.[14]
 
 
 31
 It therefore appears that the statutory language of the relevant part of the 1942 act (quoted in footnote 11) was broad enough to authorize a Government appeal to a circuit court of appeals where the order appealed from dismissed an indictment or information, or a count thereof, because of a defect in such indictment or information or in the institution of the prosecution, and where the particular defect did not involve the invalidity or construction of the statute upon which the indictment or information was founded. As before noted, the scope of the 1942 act, as thus defined on the basis of the statutory language, is somewhat broader than contemplated by the House Committee on the Judiciary.
 
 
 32
 On March 21, 1946, and before any court had occasion to rule on the meaning of these terms as used in the 1942 act, all pleas other than the pleas of not guilty, guilty, and nolo contendere, and all demurrers and motions to quash were abolished by Rule 12(a), Federal Rules of Criminal Procedure, 18 U.S.C.A.[15] It was there provided that defenses and objections raised before trial which theretofore could have been raised by one or more of the abolished pleas, demurrers, or motions should thereafter be raised "only by motion to dismiss or to grant appropriate relief, as provided in these rules."
 
 
 33
 The effect this was intended to have on the 1942 statute and other statutes which contain these common-law terms was dealt with in Rule 54(c), Federal Rules of Criminal Procedure. It was there provided that the words "demurrer," "motion to quash," "plea in abatement," "plea in bar," and "special plea in bar" in any act of Congress "shall be construed to mean the motion raising a defense or objection provided in Rule 12."[16]
 
 
 34
 It follows that beginning on March 21, 1946, when Rule 12 became effective, the decisions or judgments which were appealable by the Government to a court of appeals were no longer required to be responsive to defenses and objections labeled "demurrer," "motion to quash," or "plea in abatement." Thenceforth it was sufficient, and in fact necessary, that they be responsive to defenses and objections raised by a motion to dismiss or to grant appropriate relief.
 
 
 35
 On the other hand, it was not intended by the adoption of Rule 12 to expand the scope of Government appeals as it existed prior to the adoption of the rules. This is made clear by reference to the limited purpose intended to be served by the adoption of Rule 12(a), as noted above. Thus only such motions to dismiss or to grant appropriate relief, made under Rule 12, which are the substantial equivalent of the former demurrer, motion to quash, or plea in abatement, are appealable by the Government.[17]
 
 
 36
 It follows that after the adoption of Rule 12, as before, the Government could appeal to a circuit court of appeals under the 1942 act from an order dismissing an indictment or information only where the order was based upon a defect in the indictment or information, or in the institution of the prosecution. This view finds support in United States v. Janitz, 3 Cir., 161 F.2d 19, decided while the 1942 act was in effect but after adoption of Rule 12.[18] The Government's appeal was there dismissed on this reasoning (at page 21):
 
 
 37
 "* * * We think it clear from the recital of the facts already set out that the learned Judge's order of dismissal was not based on any objection brought against the indictment at all. * * *"[19]
 
 
 38
 The scope of appellate review afforded the Government under the 1942 act after the adoption of Rule 12 was not affected by the 1948 enactment which gave us § 3731.[20] The sole purpose of Congress in enacting § 3731 was to bring the statutory language of the Criminal Appeals Act into conformity with Rule 12. No substantive changes were intended.[21]
 
 
 39
 It follows from all that has been said that reading § 3731 in the light of its legislative history, as we are required to do, the Government may appeal thereunder from a decision or judgment "setting aside, or dismissing" an indictment only if such decision or judgment is based upon a defect in the indictment or in the institution of the prosecution. We come to this conclusion without invoking that other principle of statutory construction to which reference has been made — that the Criminal Appeals Act is to be strictly construed. Application of the latter principle, however, could only add support to the conclusion just stated.
 
 
 40
 The instant actions were not dismissed because of any defect in the indictments or in the proceedings leading to their procurement. They were dismissed because the United States refused to comply with pretrial discovery orders.
 
 
 41
 The refusal of the United States to comply with these orders made it impossible to proceed with the trial. Essentially, then, the United States caused an "unnecessary delay" in bringing appellees to trial.[22] This is a ground of dismissal under Rule 48(b), Federal Rules of Criminal Procedure. The court accordingly may have regarded appellees' motions to dismiss as in effect invoking the court's power to dismiss under Rule 48(b). On the other hand, it may simply have purported to act in the exercise of its inherent power to do justice.
 
 
 42
 In either event, or in any event, the court did not actually or purportedly act under Rule 12 under which all orders appealable by the government under § 3731 are blanketed. But even if the court had purported to act under Rule 12, the defense or objection with which it was dealing, as we have seen, was not one which could have provided the basis for a Government appeal under § 3731. The conclusion which necessarily follows is that this court is without jurisdiction to entertain these appeals.
 
 
 43
 This conclusion finds support in several recent court opinions, one of which is United States v. Heath, supra, decided by this court. In Heath the district court had dismissed an indictment because the Government had taken from the defendant and had thereafter lost books and records which were indispensable to the defense. Having lost these documents, the Government was unable to comply with an order made under Rule 16, Federal Rules of Criminal Procedure, that the books and records be produced for inspection. Under these circumstances this court regarded the order dismissing the indictment as an exercise of inherent power, or of power conferred by Rule 48(b), Federal Rules of Criminal Procedure. The appeal was accordingly dismissed as not being encompassed within § 3731.
 
 
 44
 The facts of this case are unlike those of Heath in that here the documents sought were not taken from appellees and they were available had the United States chosen to obey the order to produce. The court in Heath (260 F.2d at page 631) expressly reserved the question of whether appeals involving facts of the kind here presented would have to be dismissed.
 
 
 45
 Nevertheless, all that is said in Heath concerning the function of pleas in abatement, the legislative history of § 3731, the rule of strict construction, and the nonappealability of orders not covered by Rule 12 is pertinent to our case. All of these views expressed in Heath, and to which we have made liberal reference in this opinion, tend to support our above-stated conclusion that these appeals must be dismissed.
 
 
 46
 In United States v. Pack, 3 Cir., 247 F.2d 168, the district court had entered an order suppressing certain Government evidence. The defendants thereafter moved for a bill of particulars and for a "speedy" trial. At the hearing on this motion Government counsel stated that the order suppressing evidence had virtually wiped out the Government's case and asserted that the Government would not be ready for trial in the foreseeable future. The court then dismissed the indictments for want of prosecution and the Government appealed.
 
 
 47
 In dismissing the appeals the court reviewed at length the legislative history of § 3731. It reached the conclusion that this statute must be regarded as having the same scope as the 1942 form of the statute. The court thus held that under § 3731, as under the prior act, an order is not appealable by the Government unless it is based upon an objection brought against the indictment. In substance this is the same ruling as we announce in the instant case.
 
 
 48
 United States v. Nardolillo, 1 Cir., 252 F.2d 755, 758, is in some aspects strikingly similar to our case. Nardolillo was tried on an indictment charging wilful failure to pay taxes, and a verdict of guilty was returned. He then moved to arrest judgment under Rule 34, Federal Rules of Criminal Procedure, for acquittal under Rule 29, and for a new trial under Rule 33.
 
 
 49
 While these motions were pending, defendant learned of the Jencks decision. He then filed a motion for the production and inspection of certain reports in aid of his motions for acquittal or for a new trial. On the same day a subpoena duces tecum was served upon the Government to obtain these documents. The reports thus sought to be obtained were those prepared by a revenue agent and a special agent of the Internal Revenue Service, both of whom had testified for the Government at the trial. Each of them had previously prepared and filed reports to their superiors relating to the matters as to which they had testified. Defendant sought these reports for impeachment purposes.
 
 
 50
 The trial court granted the motion to produce the documents and denied the Government's counter-motion to quash the subpoena. The United States Attorney then notified defendant's counsel that certain regulations issued by the Attorney General forbade his compliance with the court's order. Defendant then renewed his motion for acquittal, adding the Government's refusal to produce the documents as another ground. Defendant also asked for "such other relief as shall be meet under the circumstances." Responsive to this motion, the trial court entered an order dismissing the action.
 
 
 51
 In dismissing the Government's appeal from this order the First Circuit held that the order was not one setting aside or dismissing an indictment within the meaning of § 3731. The reason given for this ruling was that the order was not based "upon a defect of any kind in the indictment but is based upon a defect in the proceedings held at the trial. * * *"
 
 
 52
 In the Heath, Pack, and Nardolillo cases, Government appeals were dismissed on reasoning which would call for a like result in the instant case. In a fourth case, United States v. Wheeler, 3 Cir., 256 F.2d 745, 746, a Government appeal was entertained, but on a ground which gave full recognition to the rule announced in the three first-mentioned cases.
 
 
 53
 In Wheeler the appeal was from an order dismissing an indictment "for having been returned as a result of presentation to the grand jury of the evidence ruled to have been illegally acquired." The court reaffirmed the rule which it had announced in Janitz and Pack, that jurisdiction was lacking unless the order appealed from was based on an objection brought against the indictment. It was held, however, that in Wheeler the objection was of that kind since it was asserted that the indictment had been obtained illegally.[23]
 
 
 54
 This view expressed in Wheeler is also sufficient to distinguish three other cases in which Government appeals were entertained, although this reason for accepting jurisdiction was not expressed in the opinions.
 
 
 55
 The first of these is United States v. Sugden, 9 Cir., 226 F.2d 281, decided by this court. In the proceedings before the grand jury the Government made considerable use of evidence which the district court held had been illegally obtained by monitoring defendants' radio broadcasts. The Government also advised the district court that it proposed to rely substantially on that evidence at the trial. The district court accordingly entered an order suppressing the evidence and quashing the indictments.
 
 
 56
 This court accepted jurisdiction, considered the case on the merits, and reversed and remanded for further proceedings. The question of jurisdiction was not raised by the parties or discussed in the opinion. As with any decision which deals with the merits of an appeal, Sugden must be regarded as an adjudication that this court had jurisdiction notwithstanding that the matter was not expressly dealt with in the opinion. That adjudication, however, is consonant with the result we here reach, since in Sugden, as in Wheeler, the objection amounted to an attack upon the validity of the indictment.
 
 
 57
 The other two cases in which Government appeals were entertained, but which may be likewise distinguished, are United States v. Ashby, 5 Cir., 245 F.2d 684, and United States v. Orta, 5 Cir., 253 F.2d 312. In each of these cases evidence which had been presented to a grand jury was suppressed as illegally obtained and the indictment was dismissed.
 
 
 58
 There are two additional cases in which Government appeals were entertained which cannot be distinguished on this ground. One of these is United States v. Brodson, 7 Cir., 234 F.2d 97, 241 F.2d 107. This was a criminal prosecution for wilful attempted evasion of income taxes. Prior to trial the defendant moved to dismiss the indictment. The ground asserted was that the initiation of such a prosecution at a time when the Government had defendant's financial resources tied up in jeopardy assessment proceedings deprived him of due process of law. The motion was granted and the Government appealed.
 
 
 59
 The defendant moved in the court of appeals that the appeal be certified to the Supreme Court on the ground that the order sustained a "motion in bar," as those words are used in § 3731. The court of appeals denied this motion, entertained the appeal, and later decided the case on the merits.
 
 
 60
 In adopting this course the court tacitly held that the motion in question was a plea in abatement rather than a plea in bar. Examination of the opinion, however, indicates that no contention was made or consideration given to the possibility that it was neither a plea in abatement nor a plea in bar. In holding in this manner that the motion was a plea in abatement, no reference was made to the Janitz decision, which had reached an opposite conclusion.[24] Nor was there any discussion of the common-law usage with regard to pleas in abatement or of the legislative history of § 3731.[25]
 
 
 61
 In United States v. Ponder, 4 Cir., 238 F.2d 825, it was held that under § 3731 the Government could appeal from an order suppressing evidence. This, however, was given as an alternative ground for the decision, the principal ground being that the order was entered in a separate plenary proceeding and was therefore appealable under 28 U.S.C.A. § 1291. In Carroll v. United States, supra, 354 U.S. at pages 404 and 406, 77 S.Ct. at pages 1338 and 1339, this latter ground was accepted as the true basis of the Ponder decision, and the discussion in Ponder of appealability under § 3731 was tacitly disapproved.
 
 
 62
 Omitted from the above review are a number of cases which for one reason or another are not in point.[26] Of all the cases discussed above, only Brodson represents a holding, necessary to the decision, that dismissal of an indictment for a reason not involving the validity of the indictment or of the proceedings in which it was obtained is reviewable on a Government appeal under § 3731. In our opinion, and especially since the precise point was not raised or discussed in Brodson, that decision does not outweigh the contrary conclusions stated in Janitz, Pack, and Nardolillo, and substantially confirmed in Heath and Wheeler.
 
 
 63
 The interpretation which Janitz placed upon the 1942 Criminal Appeals Act was presumably known to Congress when it enacted the 1948 revision which gave us § 3731. Yet Congress chose to make only minor revisions for the purpose of conforming with new Rule 12, Federal Rules of Criminal Procedure. Since no substantial changes were made in the law, we may assume that Congress was satisfied with the Janitz view concerning the scope of the Criminal Appeals Act.
 
 
 64
 If it is desirable that the Government be entitled to appeal from orders of the kind now before us, Congress can meet the need by enacting amendatory legislation.[27] Congress has demonstrated that it knows how to extend appellate jurisdiction when it wants to do so.[28]
 
 
 65
 The motions are granted and the appeals are dismissed.
 
 
 66
 (The death of Circuit Judge FEE occurred on August 25, 1959. Although he heard the oral argument, he did not participate in the foregoing decision.)
 
 
 
 Notes:
 
 
 [1]
 The United States Attorney also indicated in this letter that the Government entertained a restricted view as to what pretrial statements of a witness must be supplied after such witness has testified. In its opinion filed at the time the orders to dismiss were entered, the district court indicated disagreement with the Government's position as to this. The cases, however, did not come to trial and the Government was never confronted with an order to produce entered with regard to a witness who had already testified. The indicated divergence of views as to what must be produced after a witness has testified was therefore only incipient and was not the reason why the actions were dismissed
 
 
 [2]
 See Carroll v. United States, supra, 354 U.S. at page 403, 77 S.Ct. at page 1338; United States v. Rosenwasser, 9 Cir., 145 F.2d 1015, 1016-1017, 156 A.L.R. 1200; United States v. Nardolillo, 1 Cir., 252 F.2d 755, 757
 
 
 [3]
 The relevant part of § 3731, comprising the first seven paragraphs of that section, reads as follows:
 "An appeal may be taken by and on behalf of the United States from the district courts direct to the Supreme Court of the United States in all criminal cases, in the following instances:
 "From a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof, where such decision or judgment is based upon the invalidity or construction of the statute upon which the indictment or information is founded.
 "From a decision arresting a judgment of conviction for insufficiency of the indictment or information, where such decision is based upon the invalidity or construction of the statute upon which the indictment or information is founded.
 "From the decision or judgment sustaining a motion in bar, when the defendant has not been put in jeopardy.
 "An appeal may be taken by and on behalf of the United States from the district courts to a court of appeals in all criminal cases in the following instances:
 "From a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof except where a direct appeal to the Supreme Court of the United States is provided by this section.
 "From a decision arresting a judgment of conviction except where a direct appeal to the Supreme Court of the United States is provided by this section."
 
 
 [4]
 See United States v. Hark, 320 U.S. 531, 536, 64 S.Ct. 359, 88 L.Ed. 290; United States v. Goldman, 277 U.S. 229, 236, 48 S.Ct. 486, 72 L.Ed. 862; United States v. Storrs, 272 U.S. 652, 654, 47 S.Ct. 221, 71 L.Ed. 460; United States v. Thompson, 251 U.S. 407, 412, 40 S.Ct. 289, 64 L.Ed. 333; United States v. Barber, 219 U.S. 72, 78, 31 S.Ct. 209, 55 L.Ed. 99; United States v. Heath, 9 Cir., 260 F.2d 623, 627, 631; United States v. Mersky, 2 Cir., 261 F.2d 40, 44; United States v. Socony Mobil Oil Co., 1 Cir., 252 F.2d 420, 423
 
 
 [5]
 The Government concedes that the statute of limitations has run during the pendency of the motions to dismiss, and now bars new indictments against these appellees. But the orders are not for this reason to be regarded as sustaining motions "in bar" within the meaning of the Criminal Appeals Act. United States v. Storrs, supra, 272 U.S. 654, 47 S.Ct. 221; United States v. Brodson, 7 Cir., 234 F.2d 97, 99-100. On the other hand, where a criminal action is dismissed for the reason that the prosecution was theretofore barred by the statute of limitations, the order is regarded as responsive to a motion in bar, thus permitting a direct appeal to the Supreme Court. United States v. Goldman, supra, 277 U.S. 236, 48 S.Ct. 488
 
 
 [6]
 We need not now decide the hypothetical question as to what would happen if the district court persisted in regarding the causes of action as terminated because of the words "with prejudice." It is sufficient to say that in the event of a dismissal of the reindictments for that reason the Government would have an appeal to one court or the other — the Supreme Court or this court
 
 
 [7]
 The Government does not contend otherwise and in fact states in its brief that these orders are not subject to direct appeal to the Supreme Court
 
 
 [8]
 In holding that § 3731 is to be construed in the light of its legislative history, Carroll v. United States, supra, rejects for this kind of legislation the rule that the plain words and meanings of a statute cannot be overcome by resort to legislative history
 
 
 [9]
 See, also, United States v. Borden Co., 308 U.S. 188, 192, 60 S.Ct. 182, 84 L. Ed. 181; United States v. Heath, supra, 260 F.2d at page 627; United States v. Nardolillo, 1 Cir., 252 F.2d 755, 757
 
 
 [10]
 The kinds of decisions or judgments from which the United States could appeal under the 1907 act are described in that act as follows:
 "From a decision or judgment quashing, setting aside, or sustaining a demurrer to, any indictment, or any count thereof, where such decision or judgment is based upon the invalidity, or construction of the statute upon which the indictment is founded.
 "From a decision arresting a judgment of conviction for insufficiency of the indictment, where such decision is based upon the invalidity or construction of the statute upon which the indictment is founded.
 "From the decision or judgment sustaining a special plea in bar, when the defendant has not been put in jeopardy."
 
 
 [11]
 Act of May 9, 1942, c. 295, § 1, 56 Stat. 271, codified as former 18 U.S.C., 1946 ed., § 682. Our view of the purpose of the 1942 amendment is supported by what is said in H.R.Rep. No. 45, 77th Cong., 2d Sess., U.S.Code Cong.Service, 1942, page 487, dealing with this legislation. The relevant part of the 1942 act pertaining to appeals to circuit courts of appeals, now courts of appeals, comprising the sixth and seventh paragraphs of that act, reads as follows:
 "An appeal may be taken by and on behalf of the United States from the district courts to a circuit court of appeals or the United States Court of Appeals for the District of Columbia, as the case may be, in all criminal cases, in the following instances, to wit:
 "From a decision or judgment quashing, setting aside, or sustaining a demurrer or plea in abatement to any indictment or information, or any count thereof except where a direct appeal to the Supreme Court of the United States is provided by this Act."
 
 
 [12]
 See United States v. Heath, 9 Cir., 260 F.2d 623, 630-631; United States v. Janitz, 3 Cir., 161 F.2d 19, 21; United States v. Storrs, 272 U.S. 652, 654, 47 S.Ct. 221, 71 L.Ed. 460; 1 Chitty, Criminal Law (4th American Ed., 1841) 445; 2 Cooley's Blackstone (4th Andrews Ed., 1899) 1480; Clark, Code Pleading (1928) 340-341; McKelvey, Principles of Common-Law Pleading (2d Ed. rev., 1917) 96-100; Shipman, Common-Law Pleading (3d Ballantine Ed., 1923) § 225, page 388; 5 Cyclopedia of Federal Procedure, Longsdorf, 1929, § 2136, page 585
 
 
 [13]
 United States v. Lehigh Valley R. Co., D.C.Pa., 43 F.2d 135, 137; United States v. Goldman, D.C.Conn., 28 F.2d 424, 426
 
 
 [14]
 The probable explanation for inclusion in the 1942 statute of the reference to decisions or judgment "setting aside" indictments or informations is that some courts used those words while others used the word "quash," and it was desired to make clear that this difference in terminology was to be disregarded
 
 
 [15]
 The Federal Rules of Criminal Procedure became effective on March 21, 1946. 327 U.S. 821; Federal Rules of Criminal Procedure, 18 U.S.C.A. xix
 
 
 [16]
 In the Notes of the Advisory Committee on Rules, note to Rule 54(c), 18 U.S. C.A., page 605, it is stated:
 "The last sentence of this rule [quoted in part above] has particular reference to 18 U.S.C.A. § 3731, * * *. It is intended that the right of the Government to appeal in such cases should not be affected as the result of the substitution of a motion under Rule 12 for a demurrer, motion to quash and a special plea in bar. The rule is equally applicable to any other statute employing the same terminology."
 
 
 [17]
 As stated in United States v. Heath, supra, 260 F.2d at page 628:
 "Since every method of terminating criminal action against the prosecution before trial may be accomplished by filing a motion to dismiss, a court is compelled to analyze the situation in the particular case to determine whether appeal lies from such an order. * * *"
 It was not intended by the language just quoted, however, to hold that every method of terminating a criminal action before trial must be accomplished by filing a motion to dismiss under Rule 12. As Heath points out, 260 F.2d at page 632, the district court has inherent power to dismiss under certain circumstances, its power to do justice not being entirely encompassed by rules or statutes. Moreover, the district court has authority under Rule 48(b), Federal Rules of Criminal Procedure, to dismiss the indictment, information, or complaint. This power is independent of Rule 12. As pointed out in Heath, the Criminal Appeals Act does not provide for an appeal from such a dismissal.
 
 
 [18]
 This case and United States v. Pepper Bros., 3 Cir., 142 F.2d 340, decided on May 3, 1944, were the only appellate cases dealing with the jurisdiction of courts of appeals under the 1942 act, decided while that act was in effect. In Pepper it was held that the court of appeals had jurisdiction to entertain a Government appeal from an order quashing counts of an indictment on the ground that the counts were defective for failure to set out sufficient averments, notwithstanding that an additional ground involved a construction of the statute on which the counts were founded
 
 
 [19]
 United States v. Ponder, 4 Cir., 238 F. 2d 825, 829, and United States v. Ashby, 5 Cir., 245 F.2d 684, to be further discussed later in this opinion, explain Janitz as a case in which the appeal was dismissed because jeopardy had attached. However, in the later Third Circuit cases of United States v. Pack, 247 F.2d 168, 172, and United States v. Wheeler, 256 F. 2d 745, 749, the construction which Janitz placed upon the 1942 act, as noted above, was reaffirmed. But whether the rationale of Janitz, quoted above, is or is not dictum, it represents a significant contemporary appraisal of the 1942 act, as affected by the adoption of Rule 12
 
 
 [20]
 Quoted in footnote 3
 
 
 [21]
 United States v. Heath, supra, 260 F.2d at page 628; United States v. Pack, 3 Cir., 247 F.2d 168, 171. In the revisor's note to § 3731, 18 U.S.C.A., page 448, it is said: "Minor changes were made to conform to rule 12 of the Federal Rules of Criminal Procedure. * * *"
 
 
 [22]
 We are not concerned with the merits of the court's orders, and do not intend to state or imply that they were or were not correctly entered
 
 
 [23]
 Under the enlarged concept of plea in abatement, an objection that the evidence was insufficient to support the indictment or that the prosecution was guilty of misconduct before the grand jury could be raised by such a plea. Biemer v. United States, 7 Cir., 54 F.2d 1045
 
 
 [24]
 Pack, Nardolillo, and Heath had not yet been decided
 
 
 [25]
 Judge Finnegan dissented from the decision in Brodson, contending that the order was responsive to a motion in bar and that the case should therefore have been certified to the Supreme Court
 
 
 [26]
 Cases in which a Government appeal was entertained: United States v. Maryland State Licensed Beverage Association, 4 Cir., 240 F.2d 420 (one count of indictment dismissed because held to be invalid for a reason not involving construction of statute); United States v. Cefaratti, 91 U.S.App.D.C. 297, 202 F. 2d 13 (appeal under District of Columbia code).
 Cases in which a Government appeal was not entertained: United States v. Rosenwasser, 9 Cir., 145 F.2d 1015 (appeal from order suppressing evidence); Umbriaco v. United States, 9 Cir., 258 F. 2d 625 (appeal from order setting aside conviction, acquitting defendant of charge); United States v. Shapiro, 7 Cir., 222 F.2d 836 (order setting aside judgment of conviction and permitting defendant to withdraw plea of nolo contendere); United States v. Socony Mobil Oil Co., 1 Cir., 252 F.2d 420, United States v. Zisblatt, 2 Cir., 172 F.2d 740, and United States v. Mersky, 2 Cir., 261 F.2d 40 (appeals certified to Supreme Court as involving motions in bar); United States v. Williams, 4 Cir., 227 F.2d 149 (appeal not timely).
 Cases in which the Government proceeded in some other manner than by appeal: United States v. Bondy, 2 Cir., 171 F.2d 642 (application for leave to file a petition for writ of mandamus dismissed because not in aid of appellate jurisdiction since the order sought to be vacated was one granting a bill of particulars and requiring records to be produced, and was therefore interlocutory)
 
 
 [27]
 As the Supreme Court said in Carroll v. United States, supra, 354 U.S. at page 407, 77 S.Ct. at page 1340, "* * * it is the function of the Congress to decide whether to initiate a departure from the historical pattern of restricted appellate jurisdiction in criminal cases."
 
 
 [28]
 See District of Columbia Code, 1951 Ed., § 23-105, governing appeals by the United States or the District of Columbia in criminal cases arising in the District of Columbia. This code provision is quoted and construed in Carroll v. United States, supra, 354 U.S. at pages 410-411, 77 S.Ct. at pages 1341-1342, and United States v. Cefaratti, 91 U.S.App. D.C. 297, 202 F.2d 13, 15. Another instance in which Congress has expressly enlarged appellate jurisdiction with regard to Government criminal appeals is to be found in 18 U.S.C.A. § 1404, a provision of the Narcotic Control Act of 1956. The legislative history of this act is commented upon in Carroll v. United States, 354 U.S. at page 407, 77 S.Ct. at page 1340. See, also, Report No. 1478, 85th Cong., 2d Sess., Senate Committee on the Judiciary, April 28, 1958, pages 14-17, summarizing the findings and recommendations of its Subcommittee on Improvements in the Federal Criminal Code
 
 
 
 67
 ALBERT LEE STEPHENS, Circuit Judge.
 
 
 68
 I concur. However I am in full accord with Judge POPE'S comments.
 
 
 69
 POPE, Circuit Judge.
 
 
 70
 This is not a dissent, although it may sound like one. I must concede that there is plenty of modern authority for what the court does here, namely, take the perfectly plain language of a statute and by reference to its legislative history come up with a result which says that the statute does not mean what it says. The conclusion is reached that § 3731 "must be regarded as having the same scope as the 1942 form of the statute."
 
 
 71
 The relevant part of § 3731 contains language which seems, plainly and unambiguously to authorize this appeal. It says, in so many words, that the United States may appeal "from a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof except where a direct appeal to the Supreme Court of the United States is provided by this section."
 
 
 72
 Twenty-five years ago a Congressman observing a perfectly plain provision in a bill on his desk did not need to do anything more than decide if he liked what the bill said and vote accordingly. But today, under the current fashion of things, the Congressman can do no such thing. He cannot tell what he is voting for until he either (a) finds in the accompanying committee report an explanation that the bill is intended to accomplish what it plainly provides, or (b) researches all past history of all legislation in this field. The practicing lawyer at Gopher Prairie has the same problem. He takes his United States Codes and reads the text. Though it appears plain and unambiguous, he cannot safely advise his client what it means until he travels to Minneapolis and spends a few days studying the legislative history. Even then he may make a fatal error if the complete history is only available at Washington, D. C.
 
 
 73
 The views I am trying to express were never better said than by Mr. Justice Jackson in his concurring opinion in Schwegmann Bros. v. Calvert Corp., 341 U.S. 384, 396, 71 S.Ct. 745, 751, 95 L.Ed. 1035, as follows:
 
 
 74
 "The Rules of the House and Senate, with the sanction of the Constitution, require three readings of an Act in each House before final enactment. That is intended, I take it, to make sure that each House knows what it is passing and passes what it wants, and that what is enacted was formally reduced to writing. It is the business of Congress to sum up its own debates in its legislation. Moreover, it is only the words of the bill that have presidential approval, where that approval is given. It is not to be supposed that, in signing a bill the President endorses the whole Congressional Record. For us to undertake to reconstruct an enactment from legislative history is merely to involve the Court in political controversies which are quite proper in the enactment of a bill but should have no place in its interpretation.
 
 
 75
 "Moreover, there are practical reasons why we should accept whenever possible the meaning which an enactment reveals on its face. Laws are intended for all of our people to live by; and the people go to law offices to learn what their rights under these laws are. Here is a controversy which affects every little merchant in many States. Aside from a few offices in the larger cities, the materials of legislative history are not available to the lawyer who can afford neither the cost of acquisition, the cost of housing, or the cost of repeatedly examining the whole congressional history. Moreover, if he could, he would not know any way of anticipating what would impress enough members of the Court to be controlling. To accept legislative debates to modify statutory provisions is to make the law inaccessible to a large part of the country."[1]
 
 
 76
 Time was when the law was different than it is now. Thus in Helvering v. City Bank Farmers Trust Co., 1935, 296 U.S. 85, 89, 56 S.Ct. 70, 72, 80 L.Ed. 473, the Court said: "We are not at liberty to construe language so plain as to need no construction, or to refer to committee reports where there can be no doubt of the meaning of the words used." (Emphasis mine.)[2] In United States v. Mo. Pac. R. Co., 1929, 278 U.S. 269, 278, 49 S.Ct. 133, 136, 73 L.Ed. 322, the Court said: "Appellants seek to support the view for which they contend by some of the legislative history of the enactment and especially by explanatory statements made by Senator Elkins in connection with the report of the majority of the Senate committee submitting the bill for the act in question. Where doubts exist and construction is permissible, reports of the committees of Congress and statements by those in charge of the measure, and other like extraneous matter may be taken into consideration to aid in the ascertainment of the true legislative intent. But where the language of an enactment is clear, and construction according to its terms does not lead to absurd or impracticable consequences, the words employed are to be taken as the final expression of the meaning intended. And in such cases legislative history may not be used to support a construction that adds to or takes from the sigificance of the words employed."
 
 
 77
 The decisions from which I have just quoted and which seem to me to be sound and to make sense, have now been superseded by the rule stated in the majority opinion, which is, that a statute such as this "is to be interpreted in the light of its legislative history whether or not its statutory language is ambiguous."
 
 
 78
 I know of no better illustration of the universality of this legislative history technique in construing statutes than the "massive body of cases" collected in the appendix attached to Mr. Justice Frankfurter's dissenting opinion in Commissioner of Internal Revenue v. Estate of Church, 335 U.S. 632, 682, 687, 69 S.Ct. 322, 355, 93 L.Ed. 288, all decided "during the past decade" preceding Jan. 17, 1949. The English courts, which I think have had as much experience as our courts in the construction of statutes, and whose views on this matter seem persuasive to me, will have none of this business of saying that a perfectly plain statute means something else because of its legislative history. Viscountess Rhoudda's Claim, 1922, 2 A.C. 339, 383.
 
 
 79
 I think the case before us furnishes an illustration of the dubious propriety of relying upon what someone said about a statute rather than upon what the statute itself says. In this case the legislative history relied upon is the following sentence from the Revisers' Notes which accompanied the new Title 18 when it was enacted in 1948: "Minor changes were made to conform to rule 12 of the Federal Rules of Criminal Procedure." Our whole decision hangs upon that word "minor". If the sentence merely said: "Changes were made to conform to rule 12", it would accurately describe just what the new language stated.
 
 
 80
 Rule 12 abolished the ancient forms of pleadings such as motions to quash and pleas in abatement. It substituted the provision of Rule 12 to the effect that "any defense or objection which is capable of determination without the trial of the general issue may be raised before trial by motion." Specifically noticed are the "motion to dismiss or to grant appropriate relief". When the language of § 3731, which we here construe, came along in 1948, it "conformed" to Rule 12 by simply providing that the United States might appeal from a decision "dismissing any indictment or information." We decline that simple explanation because the Revisers' Notes called the changes "minor".[3]
 
 
 81
 In reading the section before us as no more than a restatement of the provisions of the 1942 act, we arrive at a result which I would think contrary to the general purposes of Congress when it passed this statute and of the Supreme Court when it adopted Rule 12, namely, to be done for all time with the ancient motions to quash and pleas in abatement and all the technicalities attendant thereto.
 
 
 82
 Notwithstanding this plain effort, we must continue to judge the appealability of an order of dismissal by examining at length the scope of the ancient plea in abatement or motion to quash. Thus we perpetuate and immortalize these anachronisms.
 
 
 83
 My purpose in writing this protest with respect to the action from which I cannot dissent, is to make a suggestion which someone with more authority than I possess might accept, and thus lead a movement to adopt a more realistic rule for statutory construction.
 
 
 
 Notes:
 
 
 [1]
 In an address to the American Law Institute (see 8 F.R.D. 121, 124) Mr. Justice Jackson said: "I, like other opinion writers, have resorted not infrequently to legislative history as a guide to the meaning of statutes. I am coming to think it is a badly overdone practice, of dubious help to true interpretation and one which poses serious practical problems for a large part of the legal profession. The British courts, with their long accumulation of experience, consider Parliamentary proceedings too treacherous a ground for interpretation of statutes and refuse to go back of an Act itself to search for unenacted meanings. They thus follow Mr. Justice Holmes' statement, made, however, before he joined the Supreme Court, that `We do not inquire what the legislature meant, we ask only what the statute means.'
 * * * * *
 "The custom of remaking statutes to fit their histories has gone so far that a formal Act, read three times and voted on by Congress and approved by the President, is no longer a safe basis on which a lawyer may advise his client, or a lower court decide a case. This has very practical consequences to the profession. The lawyer must consult all of the committee reports on the Bill, and on all its antecedents, and all that its supporters and opponents said in debate, and then predict what part of the conflicting views will likely appeal to a majority of the Court. Only the lawyers of the Capital or the most prosperous offices in the large cities can have all the necessary legislative material available."
 
 
 [2]
 The Court cited Wilbur v. United States, 1931, 284 U.S. 231, 237, 52 S.Ct. 113, 115, 76 L.Ed. 261. There it said: "And, in support of his contention, petitioner invokes history of the legislation, but that is not here permissible, for the language and meaning of the statute in respect of the question under consideration are clear."
 
 
 [3]
 I will concede that the Revisers' Notes in this case must have been read by the Congressional committees and the members of both Houses. This is more than can be said of some committee reports on which, under the current fashion, the courts are wont to rely in determining the meaning of statutes. An interesting comment on this whole subject is to be found in Roehner on Federal Taxation, Vol. 4, No. 2, Sept. 26, 1958, p. 14, where the editor quotes from an authority which he cites the assertion that the Congressional committees do not usually go over or listen to the reading of substantial portions of the committee reports which accompany tax bills
 
 
 
 84
 CHAMBERS, Circuit Judge (concurring).
 
 
 85
 I concur in the foregoing opinion of Judge HAMLEY. I desire to state (and I am sure neither Judge HAMLEY nor the court is resolving the point against me) that it is my view that we deal in this case with "jurisdiction" in the sense of whether it would be erroneous for us to act, not in the sense of naked power to act.
 
 
 86
 While I believe the statute should give the government a right to appeal in cases like these (and I do think the statute on its face tends to so indicate), I am nonetheless of the opinion that Judge Hamley has correctly analyzed the authorities of today.
 
 
 87
 BARNES, Circuit Judge (concurring).
 
 
 88
 I concur in Judge HAMLEY'S opinion and in Judge CHAMBERS' concurring opinion.