**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Richard Victor PONTO, Defendant-
Appellee.**

**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Raymond J. GROCHOWSKI, Defendant-
Appellee.**

**Nos. 18396, 18874.**

United States Court of Appeals,
Seventh Circuit.

Approved Dec. 14, 1971.

Issued Dec. 28, 1971.

Kiley and Fairchild, Circuit Judges, concurred and filed opinion.

Stevens, Circuit Judge, filed dissenting opinion in which Cummings and Sprecher, Circuit Judges, joined; Pell, Circuit Judge, filed separate dissenting opinion.

David J. Cannon, U. S. Atty., Milwaukee, Wis., James R. Thompson, U. S. Atty., Jeffrey Cole, Richard F. Sprague, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellant.

Sander N. Karp, Bryan J. Borman, Milwaukee, Wis., Gerald M. Werksman, Chicago, Ill., for defendants-appellees.

Before SWYGERT, Chief Judge, HASTINGS, Senior Circuit Judge and KILEY, FAIRCHILD, CUMMINGS, KERNER, PELL, STEVENS and SPRECHER, Circuit Judges.

KERNER, Circuit Judge.

A.

United States of America v.
Richard Victor Ponto

The defendant, Richard Ponto, was indicted for refusing to submit to induc-

tion into the Armed Forces. 50 U.S.C. App. § 462. Prior to trial, the district court granted the defendant's motion "to dismiss the indictment or for a directed judgment of acquittal." The government appealed.

A three-judge panel of this court, one judge dissenting, ruled that the government did not possess the authority to appeal under 18 U.S.C. § 3731 [1] and dismissed the case for lack of appellate jurisdiction. United States v. Ponto, 454 F.2d 647 (7th Cir. 1971). Subsequently, the government's petition for a rehearing en banc was granted.[2] Upon consideration by the entire court, we affirm the panel's opinion that the government is barred from appeal and dismiss the appeal for lack of jurisdiction.

The facts of the case were adequately stated in the panel's opinion, United States v. Ponto, *supra,* and we shall avoid unnecessary repetition.

The issue reargued en banc concerned the interpretation of the portion of 18 U.S.C. § 3731,[3] which provides:

An appeal may be taken by and on behalf of the United States from the district courts to a court of appeals in all criminal cases in the following instances:

From a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof,

except where a direct appeal to the Supreme Court of the United States is provided by this section.

I.

The panel in *Ponto* held that this portion of § 3731 permits a government appeal to this court only when the dismissal of a criminal case by a district court is based on a defect in the indictment or information, or in the institution of the prosecution. For this holding, the panel relied heavily on an en banc decision of the Ninth Circuit, United States v. Apex Distributing Co., 270 F.2d 747 (9th Cir. 1959). In *Apex,* the Ninth Circuit, after an exhaustive exposition of the legislative history of § 3731, concluded, as we do here, that paragraph 6 reached some, but not all, orders dismissing indictments.

To understand the meaning of § 3731, a short review of the Act's legislative history is in order. Prior to 1907, the government had no right to appeal from any criminal case. In 1907, Congress permitted appeal by the government to the Supreme Court in certain narrowly defined instances.[4] No government appeal was permitted to a court of appeals. 34 Stat. 1246. United States v. Sisson, 399 U.S. 267, 294, 90 S.Ct. 2117, 26 L.Ed. 2d 608 (1970); Carroll v. United States,

---

1. The Act has been amended in the Omnibus Crime Control Act of 1970, § 14(a), 84 Stat. 1890 (1971). The new provisions apply to indictments issued after January 2, 1971. Ponto was indicted in 1969.

2. This case was consolidated for oral argument along with a rehearing of United States v. Grochowski, 454 F.2d 655 (7th Cir. 1971), and the original hearing in United States v. Gustavson, 7th Cir., 454 F.2d 667. All cases involved the same jurisdictional question under § 3731.

3. The panel in *Ponto* also decided that the order of the district court could not be appealed to the Supreme Court under the "motion in bar" provision of § 3731. *Ponto,* 454 F.2d at p. 651. Since the government's petition for rehearing did not contest this ground and since it was

not argued at the rehearing en banc, we do not deem it necessary to reconsider it here.

4. The 1907 Act allowed the United States to appeal:

From a decision or judgment quashing, setting aside, or sustaining a demurrer to, any indictment, or any count thereof, where such decision or judgment is based upon the invalidity, or construction of the statute upon which the indictment is founded.

From a decision arresting a judgment of conviction for insufficiency of the indictment, where such decision is based upon the invalidity or construction of the statute upon which the indictment is founded.

From the decision or judgment sustaining a special plea in bar, when the defendant has not been put in jeopardy.

354 U.S. 394, 402 n. 11, 77 S.Ct. 1332, 1 L.Ed.2d 1442 (1957).

In 1942, Congress permitted the government to appeal to the court of appeals "[f]rom a decision or judgment quashing, setting aside, or sustaining a demurrer or plea in abatement to any indictment or information, . . .." Act of May 9, 1942, c. 295, § 1, 56 Stat. 271, codified as former 18 U.S.C. § 682 (1946 ed.). The Report of the Judiciary Committee explained the purpose of this provision:

> . . . your committee feels that the Government should have the right to appeal to the circuit court of appeals from the district court from decisions on demurrers or pleas in abatement to indictments or informations in cases involving the sufficiency of the allegations in the indictments or informations in the same manner in which the Government may now appeal from decisions or demurrers to indictments direct to the Supreme Court in those cases involving the invalidity of a statute or the construction of a statute.

U.S.Code Cong.Serv. 77th Cong., 2d Sess. 1942, pp. 487–88.

The 1942 provision, then, permitted government appeal from a decision responsive to a demurrer or plea in abatement to the indictment. Under common law, a demurrer was raised by a criminal defendant to question the legal sufficiency of the indictment. 2 Orfield, Criminal Procedure Under the Federal Rules, §§ 12.9, 12.10, 12.15 (1966 ed.); Clark, Handbook of the Law of Code Pleading, 501–07 (1947). A plea in abatement attacked the indictment for reasons not apparent on the face of the indictment. Orfield at § 12.8. It was " . . . an appropriate means of raising objections to an indictment which may involve serious and prejudicial infringements of procedural rights, such as an objection to the qualifications of grand jurors . . . to the method of selection of the grand jury . . . or its composition. . . ." See United States v. Janitz, 161 F.2d 19, 21 (3d Cir. 1947); United States v. Rintelen, 235 F.

787, 788 (D.C., S.D.N.Y.1916). Misnomer of the defendant in the indictment was also grounds for the plea. United States v. Apex Distributing Co., *supra*, 270 F.2d at 753. The crucial characteristic of pleas in abatement was that they attacked the indictment by proof of extrinsic facts. At any rate, by 1942, demurrers and pleas in abatement encompassed motions attacking an indictment on its face or the institution of the prosecution leading up to the issuance of an indictment. United States v. Janitz, *supra*.

In 1946, the Federal Rules of Criminal Procedure abolished the use of common law procedures such as a demurrer and plea in abatement and substituted in their place the motion to dismiss the indictment under Rule 12, Fed.R.Crim.P. At the same time, the Advisory Committee on the Rules explained that the government's right to appeal should not be affected by the change in terminology. Notes of Advisory Committee on Rules, Note to Rule 54(c), 18 U.S.C. p. 506. Rule 54(c) was enacted to provide that common law pleading terms, including demurrer and plea in abatement, which appear in Acts of Congress "shall be construed to mean the motion raising a defense or objection provided in Rule 12." Rule 54(c), Fed.R.Crim.P.

In 1948, Congress amended § 3731 and for demurrers and pleas in abatement as a basis for government appeal to the court of appeals, substituted the words "decision or judgment setting aside, or dismissing any indictment or information." 18 U.S.C. § 3731, ¶ 6. The change in wording was made to conform the terminology of the Act with the 1946 modernization in the Federal Rules of Criminal Procedure. No enlargement of the government's right to appeal was intended. United States v. Sisson, *supra*, 399 U.S. at 292–293, n. 22, 90 S.Ct. 2117; United States v. Pack, 247 F.2d 168 (3d Cir. 1957). Thus, the government, under the 1948 legislation, could appeal under ¶ 6 from dismissals of indictments under Rule 12 which would have been cognizable in legal basis as orders re-

sponsive to demurrers or pleas in abatement at common law. And, as indicated earlier, these common law pleas were limited to objections to the wording in the indictment or to the proceedings culminating in the issuance of the indictment.

The Ninth Circuit reached this very same conclusion in *Apex,* when it held that the government could appeal from an order dismissing the case because of a defect in the indictment or institution of the prosecution. United States v. Apex Distributing Co., *supra,* 270 F.2d at 755. The Third Circuit relied on the same principle in United States v. Pack, *supra,* as did the First Circuit in United States v. Nardolillo, 252 F.2d 755 (1st Cir. 1958), and United States v. Findley, 439 F.2d 970 (1st Cir. 1971). *Apex* was cited with approval in Mann v. United States, 113 App.D.C. 27, 304 F.2d 394, 395, n. 1 (1962). The Supreme Court has given implicit recognition to this interpretation of § 3731. In *Sisson,* the Court, citing *Apex,* noted that no substantive changes in the 1942 Act were intended in the 1948 amendments, United States v. Sisson, *supra,* 399 U.S. at 292–293, n. 22, 90 S.Ct. 2117. The Court stated, in analyzing appealability in United States v. Fruehauf, 365 U.S. 146, 157, 81 S.Ct. 547, 554, 5 L. Ed.2d 476 (1961): "Nor does the record raise questions concerning the sufficiency of the indictment which would require, in an appropriate case, that the case be sent to the Court of Appeals, pursuant to 18 U.S.C. § 3731." *Apex* was also cited in Will v. United States, 389 U.S. 90, 97, n. 5, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967).[5]

We are thus convinced that the rule in *Apex* is a sound interpretation of ¶ 6 of § 3731.

The government contends that this court should interpret ¶ 6 according to the plain meaning of the words in the provision. See Judge Pope's concurring opinion in *Apex,* 270 F.2d at 759–762.

Resort to legislative history and intent, it is argued, is proper only when the wording of a statute is ambiguous on its face and when that analysis will remove the ambiguity.

This doctrine of statutory interpretation has been rejected by the Supreme Court, however, in a case involving construction of § 3731:

> It is axiomatic, as a matter of history as well as doctrine, that the existence of appellate jurisdiction in a specific federal court over a given type of case is dependent upon authority expressly conferred by statute. And since the jurisdictional statute prevailing at any given time are so much a product of the whole history of both growth and limitation of federal-court jurisdiction since the First Judiciary Act, 1 Stat. 73, they have always been interpreted in light of that history and of the axiom that clear statutory mandate must exist to found jurisdiction. Carroll v. United States, 354 U.S. 394, 399, 77 S.Ct. 1332, 1336, 1 L.Ed.2d 1442 (1957).

Appealability under § 3731 is dependent upon an appellate court's characterization in common law pleading terms of the legal basis of the district court's ruling. The Supreme Court, in analyzing another part of § 3731, which allows appeal from a decision "arresting a judgment of conviction," explained that:

> In using that phrase in the Criminal Appeals Act, Congress did not, of course, invent a new procedural classification. Instead, Congress acted against a common-law background that gave the statutory phrase a well-defined and limited meaning. United States v. Sisson, *supra,* 399 U.S. at 280, 90 S.Ct. at 2125.

The Court then reviewed the development of the statutory phrase under consideration from its common-law usage through its inclusion by Congress in § 3731. This

5. We reject the argument that the remand order in United States v. Weller, 401 U.S. 254, 91 S.Ct. 602, 28 L.Ed.2d 26 (1971), implies a conclusion contrary to that stated in *Apex.* See the panel's analysis in United States v. Ponto, *supra,* 454 F.2d at 653, n. 6.

same approach was also utilized by the Supreme Court in two other recent § 3731 cases, United States v. Weller, 401 U.S. 254, 91 S.Ct. 602, 28 L.Ed.2d 26 (1971), and United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). Such has been the analysis in most cases dealing with § 3731. See, for example, Judge Learned Hand's discussion in United States v. Zisblatt, 172 F. 2d 740, 742 (2d Cir. 1949) ("The Criminal Appeals Act spoke to the law, as it then was.").[6]

Another interpretation of ¶ 6 urged upon us and mentioned by Judge Stevens in his dissent to the panel's opinion in Ponto, supra, 454 F.2d 647 at 655, is that we should examine the effect of a dismissal order rather than the reasons for its entry. This view finds support in one portion of the 1942 Committee Report, *supra,*

> The bill would . . . [p]ermit appeals to the circuit court of appeals from all decisions and judgments having the effect of quashing, setting aside, or sustaining demurrers or pleas in abatement to indictments or informations. . . .

It is claimed that Congress intended, by this statement, to allow the government to appeal from all pre-trial dismissal orders in which the end result—the actual "effect" of the ruling—is the dismissal of the indictment. Such an interpretation would include virtually all dismissals prior to trial since most pre-trial orders dismissing the action do so by dismissing

the indictment under Rule 12 of the Federal Rules of Criminal Procedure. United States v. Heath, 260 F.2d 623, 628 (9th Cir. 1958); United States v. Apex Distributing Co., *supra,* 270 F.2d at 751 ("The dismissal of a criminal action inescapably sets aside or dismisses the indictment or information on which it is based.").

We do not believe such a broad reading was intended by Congress. The 1942 Report, as quoted *supra,* states that the enactment would limit the right of appeal to dismissal orders "involving the sufficiency of the allegations in the indictment or information" when raised by demurrer or plea in abatement. The extraction of the phrase, "having an effect," from the 1942 Committee Report does not necessitate a contrary conclusion.[7] Further, such a broad reading of the words in § 3731 would violate the long standing principle that the Act should be strictly construed against the government's right to appeal. United States v. Sisson, *supra,* 399 U.S. at 270, 286, 291, 90 S.Ct. 2117; Carroll v. United States, *supra,* 354 U.S. at 394, 400, 406; United States v. Borden Co., 308 U.S. 188, 192, 60 S.Ct. 182, 84 L.Ed. 181 (1939). In addition, we rely on the Supreme Court's statement with respect to § 3731: "While it is always necessary to categorize a situation realistically, to place a given order according to its real effect, it remains true that the categories themselves were defined by the Congress in terms of form." Carroll v. United States,

6. Congress has implicitly conceded that the interpretation of the 1948 Act according to common-law and legislative history was necessary. In discussing the changes in the 1970 enactment of § 3731, Congress stated: "Technical distinctions in pleadings as limitations on appeals by the United States were eliminated. . . ." 3 U.S.Code Cong. and Admin. News (1970), 91st Cong., 2d Sess., at pp. 5848–49. This statement suggests that prior to the 1970 Act, Congress intended that § 3731 be interpreted in light of technical distinctions in common law pleading.

7. We note that the legislative history of the 1970 version of § 3731 states:
 Technical distinctions in pleadings as limitations on appeals by the United States were eliminated and in their place the Government was authorized to appeal any decision or order terminating a prosecution except an acquittal.
 3 U.S.Code Cong. & Admin.News (1970), *supra,* at p. 5848.
 This explanation by Congress in 1970 implies that in 1942 and 1948 it did not authorize an appeal from any pre-trial order terminating a prosecution (except an acquittal) which has the effect of dismissing the indictment.

*supra,* 354 U.S. at 406, 77 S.Ct. at 1339. Thus, " . . . in a limited sense, form *is* substance with respect to ascertaining the existence of appellate jurisdiction." *Id.* As in *Apex,* we must examine the legal basis of the dismissal order rather than its end result to determine whether it is included within the restricted definitions in § 3731.

 Applying the standard of appealability we have enunciated to the facts in this case, we find that the dismissal order was not based on a defect in the wording of the indictment or in the institution of the prosecution. There was no contention below that the indictment was fatally insufficient or that the proceedings culminating in the issuance of the indictment were faulty in any way. Rather, the judge seemed to be disturbed about the draft board's procedures in classifying Ponto I–A. His comments prior to his ruling on the motion to dismiss focused on these considerations. The alternatively titled motion to dismiss the action dealt with Ponto's classification and the actions of the draft board, and was not an attack against the indictment itself.

## II.

 An objection to the local board's classification of a registrant can be raised as a defense to a prosecution under 50 U.S.C. App. § 462. The Selective Service Act, 50 U.S.C. App. § 460(b) (3), provides that all questions relating to judicial review of the classification and processing by a board be reviewed in this manner. The motion in the instant case presented questions concerning Ponto's classification, which are raised only by defense. The decision to dismiss by the district judge was based on questions presented by this defense. As such, it was a ruling on the merits of the defense.

 The panel in *Ponto* decided that the order was in the nature of an acquittal, *i. e.,* a ruling on the merits by which the defendant was discharged from prosecution. See Pratt v. United States, 70 App.D.C. 7, 102 F.2d 275, 279 (1939). Upon reconsideration, we conclude that the ruling below was, in fact, an acquittal, and for this reason, appeal by the government is prohibited by the double jeopardy clause of the Fifth Amendment.

 The defense raised by the motion below could have been decided at trial. See United States v. Ramos, 413 F.2d 743, 744, n. 1 (1st Cir. 1969). Yet, a defense on the merits can likewise be decided prior to trial, as it was here. Rule 12(b) (1) of the Federal Rules of Criminal Procedure allows a party to present prior to trial a motion to dismiss on a defense "which is capable of determination without trial of the general issue. . . ." See United States v. Covington, 395 U.S. 57, 60, 89 S.Ct. 1559, 23 L.Ed.2d 94 (1969); United States v. Fargas, 267 F.Supp. 452, 455 (S.D.N.Y. 1967). We believe that the motion ruled upon by the court below fits into this category. The validity of a classification involves questions of law for the judge, as in any judicial review of administrative decision-making. United States v. Ramos, *supra,* 413 F.2d at 744–745, n. 1; Martinetto v. United States, 391 F.2d 346, 347 (9th Cir. 1968). The jury is to determine whether, in fact, the defendant refused to submit to induction. Questions involving the validity of the defendant's classification do not come before it. For this reason, in many cases, a ruling on the merits of a defense of improper classification could be made by the judge prior to trial when " . . . trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." United States v. Covington, *supra,* 395 U.S. at 60, 89 S. Ct. at 1561. We find that the pre-trial motion presented to the judge in this case was of such a character.

 Since the dismissal order was based on a determination on the merits, it was an acquittal to which jeopardy

attached.[8] United States v. Sisson, *supra*, 399 U.S. at 289–290, 90 S.Ct. 2117; United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896); Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); Helvering v. Mitchell, 303 U.S. 391, 398, 58 S.Ct. 630, 82 L.Ed. 917 (1938). See United States v. Jorn, 400 U.S. 470, 479, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). Thus, government appeal from this ruling would violate the double jeopardy clause of the Fifth Amendment since a retrial on the charge would be prohibited. Kepner v. United States, 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114 (1904); United States v.

8. That the judge did not review the contents of Ponto's selective service file does not change the character of his ruling. His failure to review the file may be erroneous, but it does not create appellate jurisdiction. See United States v. Sisson, *supra*, 399 U.S. at 295, 90 S.Ct. 2117, 26 L.Ed.2d 608.

9. Double jeopardy considerations enter into the legislative history of § 3731. United States v. Sisson, *supra*, at 298–299, 305, 90 S.Ct. 2117. The Act limited government appeal in those situations where retrial was permissible under the double jeopardy clause. As the Court in *Sisson* stated at 299, 90 S.Ct. at 2134: "A primary concern of the bill that emerged into law was that no appeal be taken by the Government from an acquittal no matter how erroneous the legal theory underlying the decision." Congress was mindful of the fact that "[c]riminal appeals by the Government 'always threaten to offend the policies behind the double-jeopardy prohibition,'" Will v. United States, *supra*, [389 U.S.] at 96, 88 S.Ct. at 274, even in circumstances where the Constitution itself does not bar retrial." United States v. Sisson, *supra*, at 298, 90 S.Ct. at 2134. The Criminal Appeals Act merely limits government appeal in cases where jeopardy has not attached. "No Senator thought that Congress had the power under the Constitution to provide for an appeal in circumstances in which that would violate the Constitution." *Id.* at 305, 90 S.Ct. at 2138. To view the Act as broader would render it unconstitutional.

10. The government urged at oral argument that we treat this case as a petition for a writ of mandamus. We follow the holding of the Supreme Court in Fong Foo

Ball, *supra*. We view this as an independent ground for holding that the government may not appeal in this case.[9]

 For the reasons we have stated, we dismiss this appeal for lack of jurisdiction.[10]

### B.

### United States of America v. Raymond J. Grochowski

The defendant, Raymond J. Grochowski, was indicted for refusing to submit to induction into the Armed Forces, 50 U.S.C. App. § 462. Prior to trial, the district court dismissed the indictment

v. United States, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962), that a court of appeals possesses no jurisdiction to issue a writ of mandamus after an acquittal. The issuance of the writ would violate the double jeopardy clause.

Assuming the double jeopardy clause did not bar appeal in this case, the only possible basis for the issuance of mandamus would be that the actions of the district judge amounted to a clear abuse of power. And even then, we would be faced with the question of whether mandamus jurisdiction exists when appellate jurisdiction is lacking under § 3731. The Second Circuit in United States v. Dooling, 406 F.2d 192 (2d Cir. 1969), cert. denied, Persico v. United States, 395 U.S. 911, 89 S.Ct. 1744, 23 L.Ed.2d 224 (1969), reh'g denied, Persico v. United States, 400 U.S. 874, 91 S.Ct. 95, 27 L.Ed.2d 112 (1970), held that a petition for mandamus may be granted even if the government is barred from appeal under § 3731. The Supreme Court indicated in Will v. United States, 389 U.S. 90, at 97, 88 S.Ct. 269, at 274, 19 L.Ed.2d 305 (1967), that mandamus ". . . may never be employed as a substitute for appeal in derogation" of the policies of § 3731. These cases suggest that a writ of mandamus may be granted in a case ostensibly unappealable under § 3731, when the district judge so abuses his authority as to render his decision a nullity.

In any event, we believe that the district judge clearly possessed the power to rule on the defense prior to trial under Rule 12, Fed.R.Crim.P., even if his ruling may have been erroneous. In *Dooling*, the action of the district judge clearly amounted to a judicial usurpation of power.

because the defendant, claiming to be a conscientious objector, had not presented his conscientious objector (I–O) claim to his local draft board. In dismissing the action, the judge remanded the case to the board to give the defendant an opportunity to present his I–O claim. The government appealed this dismissal order.

A three-judge panel of this court ruled that the government was barred under 18 U.S.C. § 3731 from appealing the dismissal order to this court or the United States Supreme Court.[11] United States v. Grochowski, 454 F.2d 655 (7th Cir. 1971). Subsequently, the government's petition for rehearing *en banc* was granted. Upon consideration by the entire court, we affirm the panel's opinion that the government is barred from appeal, and dismiss for lack of jurisdiction.

### I.

The dismissal order was not based on any defect in the indictment or institution of the prosecution. The judge's order addressed itself to the classification of the defendant and was intended to allow the defendant to raise his I–O claim before his local board. These matters are raised by defense and not by objections to the sufficiency of the indictment or institution of the prosecution. Consequently, the government may not appeal under § 3731.

### II.

We also believe that the order below was an acquittal and thus appeal is prohibited by the double jeopardy clause of the Fifth Amendment. The ruling that the defendant did not present a written request for an I–O reclassification addressed itself, however erroneously, to the classification process. As such, it was a

decision on the merits of a defense which could have been raised at trial, but which was capable of determination prior to trial under Rule 12(b) (1) of the Federal Rules of Criminal Procedure. Jeopardy attached to the ruling, and the government is thus prohibited from an appeal.

The decision of the three-judge panel is affirmed. This appeal is dismissed for lack of jurisdiction.

Appeals dismissed.

Nos. 18396, 18874

KILEY and FAIRCHILD, Circuit Judges (concurring).

We concur in Judge Kerner's opinion. With respect to Part II [in both *Ponto* and *Grochowski*] it is our analysis that the order of the district court appealed from was a dismissal with prejudice and had the effect of barring a second prosecution. White v. United States, 126 U.S. App.D.C. 309, 377 F.2d 948 (1967); *see* United States v. Oppenheimer, 242 U.S. 85, 87, 37 S.Ct. 68, 61 L.Ed. 161 (1916).

Nos. 18396, 18874

STEVENS, Circuit Judge, dissenting, with whom CUMMINGS and SPRECHER, Circuit Judges, join.

The indictments of Grochowski and Ponto were dismissed in advance of trial. In each case the trial judge was apparently persuaded that there was a defect in the defendant's classification by the Selective Service Board. In Grochowski's case, as a result of the Supreme Court's later decision in Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625, it is plain that the district court erred. In Ponto's case, it is equally plain that the indictment was valid on its face.[1]

---

11. The panel decided that the "motion in bar" provision of § 3731 was inapplicable. Since the government's petition for rehearing did not contest this ground and since it was not argued at the rehearing *en banc*, we do not deem it necessary to reconsider it here.

1. Ponto's motion was based, in part, on the fact that his file contained a letter

written by a former Assistant U.S. Attorney recommending against prosecution. There was also a claim that a "courtesy hearing" in response to the last of Ponto's various claims for exemption amounted to a *de facto* reopening. The Government urges that the district court's action was so clearly without a proper legal basis that the dismissal was void.

These cases happen to involve alleged violations of the Selective Service law. The problem they identify, however, cuts across the whole spectrum of criminal justice, from cases like the ill-fated Sherman Act prosecution of the "Beef Trust," [2] which led to the original enactment of the Criminal Appeals Act in 1907,[3] to more familiar forms of federal crime. At issue is the scope of a district judge's absolute power to decide, for whatever reason may appeal to his fancy, that a defendant may not be required to stand trial. More narrowly, the question is whether 18 U.S.C. § 3731 authorizes a court of appeals to review a district court order dismissing an indictment in advance of trial if the trial judge has erroneously concluded, on the basis of matter not disclosed in the indictment itself, that the defendant is not guilty.

There are two quite different theories which might support a holding that we have no jurisdiction of these appeals. The majority has adopted both. On the one hand, the court's opinion holds that Ponto and Grochowski were really acquitted even though the district judges merely purported to dismiss their respective indictments. On the other hand, the opinion also holds that even though the orders were dismissals rather than acquittals, they are not appealable because the statute does not mean what it says.

Under the first theory the objection to our appellate jurisdiction is constitutional and there is no need to analyze the statutory language or the niceties of the common law which interested the Ninth Circuit in *Apex*.[4] If the double jeopardy clause applies, defendants may not be re-indicted, and the Government may not appeal. United States v. Ball, 163 U.S. 662, 671, 16 S.Ct. 1192, 41 L.Ed. 300; United States v. Sisson, 399 U.S. 267, 289–290, 90 S.Ct. 2117, 26 L.Ed.2d 608. Under this approach, the cases take on exceptional importance because the holding will also determine appealability of comparable orders under the Omnibus Crime Control Act of 1970,[5] which amended 18 U.S.C. § 3731.

Under the second theory, the objection to our appellate jurisdiction rests on an esoteric exception to plainly written statutory language. The existence and scope of the exception are thought to be based on common law distinctions which the statute was amended to eliminate. To discover the exception, the Ninth Circuit made a microscopic analysis of language which had been eliminated from the statute in 1948 without noticing that language which was retained by Congress provided a sufficient basis for appellate review of a pretrial order "setting aside" an indictment. As Mr. Justice Holmes recognized in 1913,[6] a simple reading of those words will avoid the niceties of an argument predicated on other language in the Act. The exception discovered by the Ninth Circuit is so esoteric that it was unknown to

---

2. United States v. Armour & Co., 142 F. 808 (N.D.Ill.1906).

3. See, *e. g.*, debates on the 1907 legislation, 41 Cong.Rec. 2753 (Feb. 12, 1907, remarks of Sen. Patterson); *id.* at 2757 (Feb. 12, 1907, remarks of Sen. Nelson); *id.* at 3046 (Feb. 15, 1907, remarks of Rep. Jenkins and Rep. Crumpacker).

4. United States v. Apex Distributing Co., 270 F.2d 747 (9th Cir. 1959).

5. Section 14(a) of that statute, which amends § 3731, provides, in part:
"In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution."
84 Stat. 1880.
The new statute is applicable to prosecutions commenced subsequent to January 2, 1971.
See footnote 4 to Mr. Justice White's dissenting opinion in United States v. Sisson, 399 U.S. at 328–329, 90 S.Ct. 2117; see also the statement of Mr. Justice Black and Mr. Justice Brennan in United States v. Jorn, 400 U.S. 470, at 487–488, 91 S.Ct. 547, 27 L.Ed.2d 543.

6. See United States v. Adams Express Co., 229 U.S. 381, 388, 33 S.Ct. 878, 57 L.Ed. 1237, quoted at footnote 33, *infra*.

any of the litigants in these cases when their original briefs were filed,[7] to any member of the Supreme Court when *Weller* was remanded to the Ninth Circuit,[8] or to any member of Congress when § 3731 was amended in 1948.

The majority opinion rests on both the constitutional and statutory theories. It is, therefore, appropriate to explain why neither is tenable.

### I.

Whether the problem is analyzed in constitutional terms, as a matter of interpreting applicable procedural rules, or solely by considering what the district judges did in these cases, it is perfectly clear that the challenged orders were not acquittals.

The Fifth Amendment provides that no person shall be subject for the same offense "to be twice put in jeopardy." Quite obviously the prohibition is inapplicable until a defendant has been put in jeopardy at least once.[9] It has long been settled that the mere return of an indictment, the entry of a not guilty plea, or the conduct of a preliminary examination does not place a defendant in jeopardy. Bassing v. Cady, 208 U.S. 386, 391–392, 28 S.Ct. 392, 52 L.Ed. 540; Collins v. Loisel, 262 U.S. 426, 429–430, 43 S.Ct. 618, 67 L.Ed. 1062. "Jeopardy attaches" when the trial commences.

United States v. Jorn, 400 U.S. 470, 480, 91 S.Ct. 547, 27 L.Ed.2d 543.[10]

In these cases the trials never started. There had been no waiver of a jury by either Ponto[11] or Grochowski, and no jury had been impanelled. In both cases the defendants' motions were supported by their Selective Service files, and during the hearing on Grochowski's motion, he took the stand to explain why he had not claimed conscientious objector status before his draft board. However, neither the judge nor the parties treated the preliminary proceedings as a part of the trial itself. At most it could be said that each defendant supported his motion to dismiss with factual matter which the judge regarded as a valid defense to the charge. In my opinion, since the defendants had not been placed in jeopardy, they are not entitled to the constitutional protection which flows from a judgment of acquittal.

The Federal Rules of Criminal Procedure do not contemplate the entry of a judgment of acquittal until "after the evidence on either side is closed." Rule 29, Fed.R.Crim.P. The fact that an order may be given the wrong name does not prevent it from operating as an acquittal provided that it is predicated "upon evidence adduced at the trial." United States v. Sisson, 399 U.S. 267, 290, 90 S.Ct. 2117, 2129, 26 L.Ed.2d 608.[12]

---

**7.** Neither Ponto nor Grochowski *originally* questioned our jurisdiction on either of the theories discussed in this opinion. Both contended the district court action should be considered a plea in bar and therefore appealable only to the Supreme Court under the fourth paragraph of § 3731. Both also argued, alternatively, that the district court action was a judgment of acquittal which precluded any appeal. Neither cited *Apex;* neither contended that there was a category of non-appealable dismissals; neither contended that jeopardy would have attached absent a conclusion that the action of the district court was a judgment of acquittal.

**8.** See United States v. Weller, 401 U.S. 254, 91 S.Ct. 602, 28 L.Ed.2d 26.

**9.** See Shevlin-Carpenter Co. v. Minnesota, 218 U.S. 57, 67, 30 S.Ct. 663, 54 L.Ed.

930; State v. War, 38 N.J.Super. 201, 118 A.2d 553, 555 (1955).

**10.** In a jury trial the critical point is when the jury is impanelled; in a bench trial, when evidence is first received. See, *e. g.,* Hunter v. Wade, 169 F.2d 973 (10th Cir. 1948); aff'd, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974, reh. denied, 337 U.S. 921, 69 S.Ct. 1152, 93 L.Ed. 1730; Newman v. United States, 133 U.S.App.D.C. 271, 410 F.2d 259 (1969).

**11.** Ponto's attorney indicated at the hearing on the motion that he was "willing" to submit the issue to a bench trial, but he never did so. No jury waiver was ever filed.

**12.** The entire paragraph from which the phrase is quoted precludes an interpretation of *Sisson* as permitting an acquittal in advance of trial:

"There are three differences between the hypothetical case just suggested

In the federal system there is no rule of criminal procedure authorizing the entry of a pretrial judgment of acquittal.[13]

Finally, it should be noted that although the prayer of Ponto's motion was "for a dismissal of the indictment or, in the alternative, for a directed judgment of acquittal," the trial judge stated unequivocally that he was granting the motion to dismiss.[14] Grochowski moved to dismiss and remand to the local board. The trial judge ordered "that the indictment be dismissed and the case remanded to the defendant's local draft board for consideration of his conscientious objector claims."

In my opinion neither of the challenged orders was an acquittal; each was a decision or judgment setting aside or dismissing an indictment.

## II.

The applicable statute, 18 U.S.C. § 3731, authorizes appeals on behalf of the United States in "all criminal cases" from "a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof." If an order is covered by this language it is appealable either to the Supreme Court[15] or to a court of appeals.[16] The appeal goes to the Supreme Court if the decision is based upon the validity or construction of the statute upon which the indictment is founded; otherwise it goes to a court of appeals.

The statute also authorizes an appeal from an order sustaining a motion in bar or a motion arresting a judgment of conviction. Thus, except for acquittals, the statute purports to provide for an appeal by the Government from every kind of adverse final order described in the Federal Rules of Criminal Procedure. The orders before us definitely did not arrest judgments of conviction, and I think it is equally clear that they are not acquittals. Although the point is not free of

and the case at hand. First, in this case it was the judge—not the jury—who made the factual determinations. This difference alone does not support a legal distinction, however, for judges, like juries, can acquit defendants, see Fed.Rule Crim.Proc. 29. Second, the judge in this case made his decision *after* the jury had brought in a verdict of guilty. Rules 29(b) and (c) of the Federal Rules of Criminal Procedure, however, expressly allow a federal judge to acquit a criminal defendant after the jury 'returns a verdict of guilty.' And third, in this case the District Judge labeled his post-verdict opinion an arrest of judgment, not an acquittal. This characterization alone, however, neither confers jurisdiction on this Court, see n. 7, *supra*, nor makes the opinion any less dependent upon evidence adduced at the trial. In short, we see no distinction between what the court below did, and a post-verdict directed acquittal." (Emphasis in original.)

13. There are, of course, orders of dismissal which determine the merits and, therefore, bar a second indictment on *res judicata* grounds. See, *e. g.*, White v. United States, 126 U.S.App.D.C. 309, 377 F.2d 948 (1967). The fact that such an order acts as a bar does not affect its appealability. See, *e. g.*, United States v. Covington, 395 U.S. 57, 89 S.Ct. 1559, 23 L.Ed.2d 94.

14. "Mr. Werksman: Will your Honor grant my motion to dismiss?
"The Court: Yes. Attach a copy of the file to your minute order and motion." (A. 75)

15. Paragraphs one and two of § 3731 read as follows:
"An appeal may be taken by and on behalf of the United States from the district courts direct to the Supreme Court of the United States in all criminal cases in the following instances:
"From a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof, where such decision or judgment is based upon the invalidity or construction of the statute upon which the indictment or information is founded."

16. Paragraphs five and six of § 3731 provide:
"An appeal may be taken by and on behalf of the United States from the district courts to a court of appeals in all criminal cases, in the following instances:
"From a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof except where a direct appeal to the Supreme Court of the United States is provided by this section."

difficulty, I also am persuaded that they did not sustain motions in bar.[17] Accordingly, I am left with the question whether the orders come within the category of decisions or judgments "setting aside or dismissing any indictment."

There can hardly be any doubt that the plain language of the statute describes these orders. I believe all of the opinions in *Apex*, and also the majority here, would accept that proposition.[18] For reasons eloquently stated by Judge Pope in his separate opinion in *Apex*,[19] that really should be the end of the matter. Nevertheless, to avoid the risk that there is a hidden category of exceptions which the legislature inadvertently failed to identify, it may be appropriate to review the statute's history.

Clear legislative history may modify a somewhat ambiguous statute; I doubt if ambiguous history should ever prevail over a clear statute. But when legislative history merely confirms the unambiguous meaning of the statutory language itself, certainly judicial concern with a policy disfavoring appeals by the Government should give way to the mandate of Congress.

There are three chapters in the history of the Criminal Appeals Act. Appeals by the Government in criminal cases were first authorized in 1907, but only to the Supreme Court and only from certain decisions.[20] In 1942 the scope of the Government's right to appeal was broadened and review by a court of appeals was first authorized.[21] In 1948, in order to conform the statutory language to that used in the Rules of Criminal Procedure which had been adopted two years earlier, Congress replaced terms such as "demurrer," "motion to quash," and "plea in abatement" with phrases like "motion to dismiss." The relevant parts of the three chapters can be briefly identified.

With respect to the 1948 enactment, two points are perfectly clear. First, following the lead taken by the judiciary when the Rules of Criminal Procedure were adopted in 1946, Congress sought to eliminate the use of ancient common law terms.[22] Second, the draftsmen of

17. *Cf.* United States v. Covington, 395 U.S. 57, 89 S.Ct. 1559, 23 L.Ed.2d 94; see United States v. Mersky, 361 U.S. 431, 441–443, 80 S.Ct. 459, 4 L.Ed.2d 423, Mr. Justice Brennan concurring. United States v. Weller, 401 U.S. 254, 259–261, 91 S.Ct. 602, 28 L.Ed.2d 26, persuades me that Judge Kerner's analysis of this aspect of the case, as set forth in his opinion for the original panel in *Ponto*, is proper. Whether that analysis can survive the *en banc* holding, relying in part on *Covington*, that Ponto's dismissal was really an acquittal, is not entirely clear.

18. See 270 F.2d 747, 751, 754, 759–762.

19. 270 F.2d at 759–762.

20. 34 Stat. 1246. As enacted on March 2, 1907, the statute read as follows:
"That a writ of error may be taken by and on behalf of the United States from the district or circuit courts direct to the Supreme Court of the United States in all criminal cases, in the following instances, to wit:

"From a decision or judgment quashing, setting aside, or sustaining a demurrer to, any indictment, or any count thereof, where such decision or judgment is based upon the invalidity, or construction of the statute upon which the indictment is founded.

"From a decision arresting a judgment of conviction for insufficiency of the indictment, where such decision is based upon the invalidity or construction of the statute upon which the indictment is founded.

"From the decision or judgment sustaining a special plea in bar, when the defendant has not been put in jeopardy.

"The writ of error in all such cases shall be taken within thirty days after the decision or judgment has been rendered and shall be diligently prosecuted and shall have precedence over all other cases.

"Pending the prosecution and determination of the writ of error in the foregoing instances, the defendant shall be admitted to bail on his own recognizance: *Provided,* That no writ of error shall be taken by or allowed the United States in any case where there has been a verdict in favor of the defendant."

21. 56 Stat. 271.

22. "The administration of justice under our Federal criminal laws was greatly

the legislation obviously thought that the 1942 Act already authorized appeals by the Government in all cases described by the new statutory language.[23]

In my opinion they correctly interpreted the 1942 Act, but even if we assume that they were unaware of certain obscure exceptions to the 1942 law, such ignorance would be irrelevant to an appraisal of their actual intent in 1948. Language which is as plain as "a decision or judgment setting aside or dismissing any indictment or information, or any count thereof" can hardly have been misunderstood by Congress, regardless of whether its understanding of the 1942 Act was perfect or imperfect.

The history of the 1942 Act is sparse, but again certain propositions are perfectly clear. The new Act substantially broadened the Government's right to appeal. Prior to 1942 orders dismissing indictments had been appealable only to the Supreme Court and, except those which sustained special pleas in bar,[24] were not appealable at all unless based on a question of statutory construction or constitutionality.[25] In the 1942 Act, this requirement was preserved as a condition to direct appeal to the Supreme Court, but was completely eliminated as a condition to appellate review. This change obviously multiplied the instances in which the Government might appeal.

Moreover, the description of the kinds of orders which were to be appealable was enlarged to include specific reference to informations as well as indictments, and to pleas in abatement as well as demurrers, motions to quash, and orders "setting aside" indictments.[26] Since special pleas in bar were covered in a separate paragraph, the full list of appealable orders described in the 1942 Act could reasonably be interpreted as covering every kind of pretrial dismissal of an indictment then known to the law.

This interpretation is confirmed by the statement in the House Committee Report that the statute would enlarge the power of the United States to appeal from all decisions and judgments *"having the effect of* quashing, setting aside, or sustaining demurrers or pleas in abatement to indictments or informations and from all decisions arresting judgments of conviction."[27] (Emphasis supplied.)

It is true that the Committee Report identified the policy considerations disfavoring appeals by the Government. It is more significant to recognize, however, that not only the Committee, but

---

facilitated by the promulgation of the new Federal Rules of Criminal Procedure. However, the process of modernizing our antiquated Federal criminal laws is only half done. The task, so carefully planned and skillfully executed, of providing the Nation with a vastly improved structure of criminal laws, will be complete when this bill becomes law." H.Rep. 304 (80th Cong., 1st Sess.) pp. 8–9.

23. For that reason the changes conforming the statutory language to the new Rules of Criminal Procedure were appropriately characterized as "minor." The reviser's note stated, in part:
 "The word 'dismissing' was substituted for 'sustaining a motion to dismiss' in two places for conciseness and clarity, there being no difference in effect of a decision of dismissal whether made on motion or by the court sua sponte.

"Minor changes were made to conform to rule 12 of the Federal Rules of Criminal Procedure."

24. The classic examples of such pleas, *autrefois acquit* and *autrefois convict*, were, of course, akin to the constitutional claim of double jeopardy.

25. See footnote 20, *supra.*

26. The relevant paragraph of the 1942 Act provided for an appeal on behalf of the United States to a circuit court of appeals "[f]rom a decision or judgment quashing, setting aside, or sustaining a demurrer or plea in abatement to any indictment or information, or any count thereof except where a direct appeal to the Supreme Court of the United States is provided by this Act." 56 Stat. 271.

27. H.Rep.No.45 (77th Cong., 2d Sess.) p. 2, 1942 U.S.Code Cong.Serv. 487, 488.

also a unanimous Congress,[28] decided that these considerations were outweighed by the desirability of broadening the Government's right to appeal. The benefits to the public at large of uniform and evenhanded interpretation of criminal statutes were clearly recognized when the statute was originally debated in 1907,[29] and though not expressly reiterated in 1942, must have motivated the important action which Congress then took.

It is also true that in explaining the desirability of enactment, the Committee pointed out that cases involving the sufficiency of the allegations in an indictment should be reviewable.[30] No court, how-

28. H.R. 139 passed the House and Senate unanimously. There were some differences over the procedure on appeal resolved in conference. The unanimous conference report was then agreed to by both Houses. See 88 Cong.Rec. 3949 (May 5, 1942).

29. "The reason, Mr. President, that I, as a member of the Committee on the Judiciary, favor this bill is this: Without this bill in the criminal law there is liable to be the greatest confusion throughout the country. Congress passes a law, and we find that the district court—it may be of Ohio—will render a decision that the law is unconstitutional. The district court in the state of Kentucky may render a decision that it is constitutional. The decision of one district court is in no manner binding or conclusive upon another district court. Decisions of such courts are only persuasive, and not controlling. They may be controlling within the jurisdiction in which they are rendered, but they are not controlling outside of that jurisdiction. And we would have, Mr. President, this strange and extraordinary condition as we have had it—and to my mind it is a disgrace to the judiciary of the country that such things should be witnessed. We have a district court in one jurisdiction holding that a law is ineffective for one reason or another—it may be that it is unconstitutional, or for some other reason—and we have a district court in another jurisdiction holding the reverse; and as the cases multiply in the several sections of the country we may find one half of the courts of the country arrayed against the other half of the courts of the country upon the same identical law; one half holding that it is entirely constitutional and the other half holding that it is unconstitutional. So, Mr. President, that confusion, that ridiculous condition exists and must continue to exist because as the law now stands, until a case involving the question shall go to the Supreme Court and it is brought there by the defendant, there can be no adjudication by a court whose decision and judgment is controlling.

"I am quite willing to have it said, so far as I am concerned, that the decision of Judge Humphreys in the Chicago case led to the legislation that is now proposed. Why should it not, Mr. President? If it calls the attention of the country to a condition of our laws that is absurd, that leads to injustice in one half of the country and to justice in the other half, to a condition of our laws that will permit the same law to be held constitutional in one half of the country and unconstitutional in the other half, and have a citizen committing an act that is not an offense in one half of the country but is an offense in the other half of the country, the same act being done without any fear of consequence in certain States in the union and leading to the penitentiary, it may be, in other States in the Union—if that condition has been brought to the attention of the country and of Congress, Congress has done right to grapple with the question and to make it possible to eliminate such a status from the laws and their enforcement in the United States." 41 Cong. Rec. 2753 (Feb. 12, 1907, remarks of Sen. Patterson).

"Mr. President, I can not see the argument presented by the Senator from Nevada [Mr. Newlands] . . . I can see how the Senator from Nevada would bring about a very unequal administration of the criminal laws if in one case he provides that a man shall be permitted to go absolutely free on the erroneous decision of one judge as to the constitutionality of a law while a man tried for exactly the same offense before another judge under the same law would be put in the penitentiary. It looks to me that the latter individual might have some right to complain, at least of the inequality of the administration of the law." 41 Cong.Rec. 2822 (Feb. 13, 1907, remarks of Sen. Carmack).

See also Congressional Record references in notes 48 and 49, *infra*.

30. "Nevertheless your committee feels that the Government should have the right to appeal to the circuit court of appeals from the district court from decisions on

ever,—not even the Ninth Circuit—has interpreted the 1942 Act as limited to such cases.[31] Such a narrow reading could not possibly be reconciled with the fact that the appealability of orders sustaining pleas in abatement was first authorized in 1942, because the common law plea in abatement did not test the sufficiency of the indictment. See United States v. Brodson, 234 F.2d 97, 99 (7th Cir. 1956). See also, e. g., 3 Foster, Federal Practice § 517 (6th ed. 1921).

In short, the history of the 1942 Act does not support a reading of the statute which is any narrower than its actual language. On the contrary, if appropriate significance is attached to the legislative decision to broaden the Government's right to appeal notwithstanding the countervailing policy considerations, it is fair to infer that the expressed desire to authorize appeals from all decisions and judgments "having the effect of" granting pretrial relief to a defendant in any of the enumerated categories was intended to be as broad as the plain language which was substituted in 1948.

Reference to the 1907 Act is appropriate to demonstrate that the statute has never contained an esoteric admonition to adhere to common law technicalities rather than the language of the statute itself. Since its original enactment, the relevant portion of the Criminal Appeals Act has consistently covered orders "setting aside" indictments. If there ever was a common law motion or plea to "set aside" an indictment, I have been unable to find any literature describing it.[32] It is, therefore, reasonable to infer that inclusion of orders "setting aside" indictments in the 1907 Act was specifically intended to minimize the necessity for analyzing the niceties of the common law in determining the scope of appel-

demurrers or pleas in abatement to indictments or informations in cases involving the sufficiency of the allegations in the indictments or informations in the same manner in which the Government may now appeal from decisions on demurrers to indictments direct to the Supreme Court in those cases involving the invalidity of a statute or the construction of a statute." H.Rep.No.45 (77th Cong., 2d Sess.) p. 2, 1942 U.S. Code Cong.Serv. 488. See 270 F.2d at 752.

The sentence quoted above is the only excerpt from the entire legislative history which even arguably supports the proposition that the committee stated that the 1942 enactment would *limit* the right of appeal to dismissal orders involving the sufficiency of the allegations in the indictment or information. There is a rather obvious difference between identifying a category of dismissals to which the statute will apply and stating that the statute was intended to be limited to that particular category. Indeed, if such a limitation had been intended, the *Apex* court's interpretation of the statute as covering all dismissals based on a defect in the indictment or information, *or in the institution of the prosecution*, was actually a broadening rather than a narrowing construction of the act.

31. The reasoning of the *Apex* opinion implies that such a narrow construction would be appropriate, but the opinion itself refuses to go that far since it recognizes that pleas in abatement. even as it has defined them, are not merely directed to the sufficiency of the allegations. 270 F.2d at 753–754. The *Apex* court's translation, which went beyond sufficiency, was that the Government could appeal from an order dismissing the case because of a defect in the indictment or institution of the prosecution. The latter phrase covers some, but not necessarily all, pleas in abatement. I do not think it is fruitful, however, to judge the Government's right to appeal on the basis of this shorthand translation of the statute rather than the broader words of the statute itself, as enacted in 1942 or in 1948.

32. The *Apex* opinion contains no satisfactory explanation of the words "setting aside"; apparently the Ninth Circuit considered them redundant. See 270 F. 2d at 753. The words were, of course, included in the 1907 Act as well as the 1942 and 1948 revisions. Mr. Justice Holmes did not consider them redundant (see note 33 *infra*) and it is significant that they were retained in the statute when the various common law terms that *Apex* analyzed so carefully were eliminated. In short, the *Apex* opinion attaches greater significance to the words of the 1942 statute that were eliminated than to the words that were retained in 1948.

late jurisdiction authorized by the statute.[33]

I recognize, of course, that certain provisions of the statute derive meaning from their common law antecedents. For reasons not applicable in these cases, the Supreme Court has looked to the common law for explanation of the special plea in bar and arrest of judgment paragraphs which provide that Court with direct appellate jurisdiction. Each of these provisions, unlike the broad language in the second and sixth paragraphs of the present Act, or the apparently all-inclusive list in the corresponding portions of the 1942 Act, obviously refers to a specific common law antecedent. Moreover, it is appropriate to contrast a broad right of appeal to any one of eleven circuits with a narrowly restricted right of direct appeal to the Supreme Court. The Supreme Court's analysis of its own mandatory jurisdiction in the motion in bar cases is not necessarily relevant to a proper construction of terms such as "setting aside" in the statutory definition of our jurisdiction. For that reason, as well as the importance of honoring the constitutional benefits which flow from an acquittal of a defendant who has been placed in jeopardy, I do not believe that the common law analysis of arrests of judgment in Mr. Justice Harlan's opinion in *Sisson* bears on the problem presented by these appeals.

I recognize, as does the majority, that Mr. Justice Harlan cited *Apex* in a footnote to his opinion in *Sisson*.[34] But he also cited Judge Duffy's opinion for this court in *Brodson*,[35] which plainly holds that the Government has a broader right to appeal than *Apex* recognizes.[36] If the citation of *Apex* in the *Sisson* opinion can be interpreted as an awareness of the question involved here, the Supreme Court's disposition of *Weller* shortly thereafter takes on added significance.[37]

In *Weller*, as here, the district court dismissed an indictment on the basis of facts not disclosed in the indictment itself. Like Ponto and Grochowski, Weller was indicted for refusing to submit to induction. In the Selective Service proceeding he had requested that his lawyer be allowed to accompany him in an appearance before his local board. Relying on a 1940 regulation,[38] the board denied his request. These facts were brought to the attention of the district court in support of Weller's motion to dismiss the indictment. The motion to dismiss was granted on the ground that the regulation was invalid.[39]

33. In his opinion for the Court in United States v. Adams Express Co., 229 U.S. 381, 33 S.Ct. 878, 57 L.Ed. 1237, Mr. Justice Holmes simply relied on the statutory words "setting aside" to avoid the niceties of defendant's argument:

> "It is objected that this court has no jurisdiction of the present writ of error under the act of March 2, 1907, c. 2564, 34 Stat. 1246," and that the court below had no authority to treat the motion of Barrett as equivalent to a demurrer. Without following the defendant into the niceties by which it seeks to escape the jurisdiction of this court after having eluded that of the court below, it is enough to say that in our opinion, if we are to go behind the entry, the decision entered was one setting aside the indictment and was based upon the construction of the statute upon which the indictment is founded, within the meaning of the act of March 2,

1907." 229 U.S. at 388, 33 S.Ct. at 878.

34. He cites *Apex* for the proposition that the 1948 Act was not intended to broaden the coverage of the 1942 Act. See 399 U.S. at 293 n. 22, 90 S.Ct. 2117, 26 L.Ed.2d 608. There was no occasion to consider the scope of the 1942 Act.

35. 234 F.2d 97 (7th Cir. 1956). *Brodson* is cited in connection with the issue as to which court has appellate jurisdiction, not as to whether there is any appeal from a dismissal. See 399 U.S. at 308.

36. The *Apex* opinion expressly recognizes this fact. See 270 F.2d at p. 758.

37. United States v. Weller, 401 U.S. 254, 91 S.Ct. 602, 28 L.Ed.2d 26, decided on Feb. 24, 1971. *Sisson* was decided on June 29, 1970.

38. See Wright v. Ingold, 7 Cir., 445 F.2d 109, 112, n. 6.

39. See United States v. Weller, 309 F. Supp. 50 (N.D.Cal.1969).

The Government filed a notice of appeal to the Supreme Court, but before argument the Solicitor General asked that Court to remand the case to the Ninth Circuit. The appellee opposed the remand, contending that jurisdiction did lie in the Supreme Court. As the Court noted, the appellee urged that the Supreme Court had "jurisdiction under either of two sections of the Act, one relating to dismissal of an indictment based on the construction of the statute on which the indictment is founded and the other to motions in bar." 401 U.S. at 257–258, 91 S.Ct. at 605.

The first of the two sections is relevant here because it is identical to the paragraph which grants us jurisdiction to review the dismissal of an indictment except for the additional requirement that a statutory construction question must be presented.[40] The Supreme Court held that the attack on the regulation did not raise such a question, but there would have been no need to discuss that point if the Court had not assumed that the dismissal was "a decision or judgment setting aside, or dismissing" an indictment within the meaning of § 3731.

The disposition which the Court made of the case was necessarily a holding that the Court was of the opinion that the district court order was appealable. For the Supreme Court did not dismiss the appeal (which would have been the only proper action to take if the district court order was something other than a dismissal covered by § 3731); it remanded the case to the Ninth Circuit for further proceedings in that court. See 401 U.S. at 261, 91 S.Ct. 602. The Supreme

Court's statutory authority to take t̶ ̶ action is predicated on its opinion th̶ the appeal should have been taken to th court of appeals originally.[41]

Perhaps, as has been respectfully suggested, that busy Court did not know what it was doing.[42] In view of the in-depth analysis of the Criminal Appeals Act which other recent cases have required,[43] such a suggestion is implausible. Nor is it likely, or indeed consistent with the statutory directive, that the Court was merely remanding the case for the purpose of having the Ninth Circuit consider the issue argued here. If that had been the Court's purpose, surely it would have said so. Since no member of the Court even questioned the appealability of the dismissal, it is more reasonable to believe that the Court reads the plain language of the second[44] and sixth[45] paragraphs of § 3731 as simply meaning what they say.

The contention that a dismissal is not within § 3731 if the trial court relies on matter which is not identified in the indictment and which relates to the general issue is also foreclosed by United States v. Fruehauf, 365 U.S. 146, 81 S.Ct. 547, 5 L.Ed.2d 476. In that case the district judge had dismissed an indictment on the basis of factual matter contained in memoranda filed by the parties which he interpreted as a "judicial admission" by the Government. A direct appeal was taken to the Supreme Court because the Solicitor General contended that a question of statutory construction was presented. That Court "set aside" the ruling dismissing the indictment and remanded the case for trial on

40. Compare footnotes 15 and 16, *supra.*

41. The relevant paragraph of § 3731 provides:
 "If an appeal shall be taken, pursuant to this section, to the Supreme Court of the United States which, in the opinion of that Court, should have been taken to a court of appeals, the Supreme Court shall remand the case to the court of appeals, which shall then have jurisdiction to hear and determine the same as if the appeal had been taken to that court in the first instance."

42. See United States v. Findley, 439 F.2d 970, 973 (1st Cir. 1971).

43. As noted above, *Sisson* was decided on June 29, 1970; United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543, was decided on January 25, 1971; *Weller* was decided on February 24, 1971.

44. See note 15, *supra.*

45. See note 16, *supra.*

the valid indictment. See 365 U.S. at 159, 81 S.Ct. 547.

Although the Court declined to consider the merits of the appeal, its disposition of the case necessarily was predicated on a holding that it had the power to entertain the appeal, a power which would not have existed if the district court's order of dismissal had not been a "decision or judgment setting aside, or dismissing" an indictment within the meaning of § 3731.[46] The author of the *Fruehauf* opinion was perhaps the busiest Justice the Court has ever had; it is nevertheless unlikely that the Criminal Appeals Act has any hidden meaning of which he was unaware. The opinion was written by Mr. Justice Frankfurter.

### III.

A concluding comment on the practicalities of the situation may be appropriate. The First Circuit in *Findley* suggested that defendants should be encouraged to seek pretrial rulings on critical issues by assuring them that the rulings will not be appealable.[47] As a practical matter, the suggestion relates primarily to defenses which would not withstand scrutiny on appeal, or at least those which counsel considers so dubious that he would rather subject his client to the ordeal of a criminal trial than take the risk that he could not retain the benefit of an erroneous dismissal. I doubt if lawyers need a guarantee against reversal on appeal as an inducement to seek a pretrial test of the validity of a novel or dubious defense. Assuming, however, that they do, is it more desirable to protect erroneous dismissals of indictments from review than to administer justice with as even a hand as possible?

The Criminal Appeals Act was passed for a twofold purpose; first, to avoid the danger that an erroneous nonreviewable decision might set a nationwide precedent,[48] and, second, to provide a pro-

---

46. The court acted pursuant to 28 U.S.C. § 2106, authorizing it to "vacate, set aside or reverse any judgment, decree, or order of a court *lawfully brought before it for review*, and . . . remand the cause and . . . require such further proceedings to be had as may be just under the circumstances." (Emphasis added.) See 365 U.S. at 158–159. Since the court can remand a case under § 2106 only if "lawfully brought before it for review," the court would have been powerless to take that action if it had no jurisdiction. Thus, by its disposition, the court necessarily decided that it had jurisdiction. Unless § 2106 is an independent grant of appellate jurisdiction, the statutory basis for the court's power to act was necessarily 18 U.S.C. § 3731. Of course, if § 2106 is an independent source of jurisdiction, it applies here.

47. "If an appeal will lie in the present case, while it cannot if the defendant waits and subjects himself to jeopardy, informed counsel believing they have a defense on the merits will henceforth protect their clients by avoiding an expediting procedure otherwise beneficial to all concerned, and only ignorant and ill-advised defendants will subject their defense on the merits to a government appeal. We will not adopt such a penalizing construction of the statute." Unit-

ed States v. Findley, 439 F.2d 970, 974 (1st Cir. 1971).

48. "In the case where a man is indicted, and he is brought before the courts and a demurrer is interposed before he is arraigned, upon the ground that the law under which he is charged with the commission of the crime was unconstitutional, utterly null, and void, the judge sustains that demurrer and discharges the prisoner. Now, if that affected only one prisoner, it would be a matter of comparatively slight importance; but it not only affects that prisoner, not only affects the accused in that particular case, but it affects all other persons who may assume to violate the same law; and a law of Congress is set aside, made absolutely null and void and inoperative by the decision of one judge, without the opportunity for the nine judges who sit in the Supreme Court to pass upon the great question whether or not . . . the law solemnly enacted by Congress is or is not constitutional, affecting not simply that accused, but affecting the operation of the law of the land, and affecting all interests which are to be effected by that law and utterly destroying the protection which that law seeks to throw over the persons, property, and transactions of all citizens of the United States." 41 Cong.Rec. 2192 (Feb. 4, 1907, remarks of Sen. Bacon).

cedure which would result in more equal treatment for defendants tried before different judges.[49] To the extent that jeopardy attaches, erroneous acquittals may frustrate those objectives. Nevertheless, the policy of both the Selective Service [50] and the Criminal Appeals Act would dictate that as far as possible all of the many registrants in the *Ehlert* category, for example, be treated uniformly. The principle of equal treatment under the law should prevail over a dubious policy of encouraging erroneous dismissals by equating them to acquittals.

I respectfully dissent.

PELL, Circuit Judge (dissenting).

I also join in the dissent. For the reasons ably expressed by Judge Stevens, I cannot agree that jeopardy has attached.

With regard to the principal issue which was before us, the construction of the fifth and sixth paragraphs of 18 U.S.C. § 3731, we are all familiar with the abolitionary steps taken in our American procedural jurisprudence, both at the state and federal levels, directed at the ancient writs and formalistic procedures of our common law. The burial of these anachronistic devices, now almost a fait accompli, which may have had some passing pecuniary benefits to the skillful advocate but probably very little long range worth to the litigant who desired to have his case heard expeditiously and on the merits, is generally believed to be a desirable result. The result reached by the *Apex* court and by the majority of this court seems to me to be an unfortunate retrogressive step.

At the risk of oversimplifying the principal issue before us, one on which my brothers have discoursed learnedly and lengthily, I would stand on the basis that when Congress said that an "appeal may be taken by and on behalf of the United States from the district courts to a court of appeals in all criminal cases . . . [including] from a decision or judgment setting aside or dismissing any indictment . . . ," it meant what it plainly said.

---

"Where it relates to an important subject that is of national concern, in which the welfare of all of the people of the United States is involved, before an act of Congress should be pronounced unconstitutional we should have the opinion of the highest court of the land—the Supreme Court. In my opinion no other court ought to have the ultimate power to place a veto upon an act of Congress." 41 Cong.Rec. 2757 (Feb. 12, 1907, remarks of Sen. Nelson).

There was a general feeling against permitting a "nisi prius judge" or "judge of the most inferior rank" to declare a law unconstitutional and thereby set precedent with no opportunity for Supreme Court review. See, *e. g.*, debates, 41 Cong.Rec. 2190 (Feb. 4, 1907, Sen. Nelson), 2191 (Sen. Bacon), 2757 (Feb. 12, 1907, Sen. Nelson), 2820 (Feb. 13, 1907, Sen. Clarke), 3046 (Feb. 15, 1907, Rep. Jenkins).

49. See especially statements of Senators Patterson and Carmack set out in note 29, *supra.*

"Judges [differ] as to whether or not a statute is constitutional. In the Senator's State a judge may decide that a statute is unconstitutional and say a prisoner may go free, while in my State a judge may take the view that it is constitutional under the statute in that State, and imprison a man for a violation of its provisions. There is now a provision of law, but there ought not to be, which permits that condition to continue by which a citizen of the Senator's State under an erroneous opinion of a judge in some preliminary matter might escape." 41 Cong.Rec. 2822 (Feb. 13, 1907, remarks of Sen. Clarke).

See also the President's message to Congress, reported in 41 Cong.Rec. at 22 (Dec. 4, 1906).

50. Uniform treatment of those meeting the criteria for certain classifications or exemptions has been required. See, *e. g.*, Oestereich v. Selective Service Local Bd., 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402; Breen v. Selective Service Local Bd., 396 U.S. 460, 90 S.Ct. 661, 24 L. Ed.2d 653. See also Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (invalidating delinquency regulations) ("[T]he statutory policy is the selection of persons for training and service 'in an impartial manner.'" 396 U.S. at 304, 90 S.Ct. at 510).

To chart a course on the uncertain sea of legislative history seems to me to be risking the ordinarily attendant possibility of foundering on the shoals of obfuscation.